Present: All the Justices

MNC CREDIT CORPORATION

OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.   Record No. 971441        February 27, 1998

CHARLES W. SICKELS, ESQ., ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Arthur B. Vieregg, Jr., Judge

The primary issue that we consider in this appeal is whether a claim of legal malpractice against an attorney may be assigned by a former client to a third party.

Because this case was decided on demurrer, we will state the facts "in accordance with well-established principles that a demurrer admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from alleged facts." Cox Cable Hampton Roads v. City of Norfolk, 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991).

In September 1992, Ashburton Limited Partnership, a Virginia limited partnership, and John D. Long, Sr., (the developers) executed a contract to buy and develop land in Fairfax County. The developers planned to construct a residential subdivision on the property. Fairfax County and the Virginia Department of Transportation required the developers to post collateral to ensure that certain contemplated public improvements in the proposed development were, in fact, constructed as planned. Maryland National Mortgage Corporation (Maryland National), a Maryland corporation, provided letters of credit as collateral. Maryland National retained Charles W. Sickels and his law firm,

Hall, Markle, Sickels & Fudala, P.C., to prepare the necessary documentation required for the transaction.

Fairfax County and the Virginia Department of Transportation refused to accept the letters of credit as collateral, and Ashburton and Maryland National posted cash bonds. The attorneys "were aware of this change and accepted the responsibility for drafting any and all documentation necessary to insure that Fairfax County and [the Virginia Department of Transportation] returned all funds so posted directly to [Maryland National] when the public improvements were completed." Maryland National posted two cash bonds with Fairfax County totaling $919,000 and a separate cash bond with the Virginia Department of Transportation in the amount of $145,500.

Pursuant to the terms of an "Asset Purchase Agreement," Maryland National assigned all its rights, interests, and obligations in connection with a loan to MNC Credit Corporation (MNC Credit).[1] Subsequently, Fairfax County released to the developers all but $153,000 of the cash bond that Maryland National had posted, and the Virginia Department of Transportation released to the developers the entire cash bond of $145,500 that Maryland National had posted. MNC Credit made repeated demands to the developers for repayment of these funds, but the developers refused, asserting that they were not

---

[1] MNC Financial, Inc., is the parent corporation of both MNC Credit Corporation and Maryland National.

required to return the funds under the terms of the loan documents that the attorneys had drafted.

MNC Credit filed its amended bill of complaint against the attorneys, as well as Ashburton and Long.[2] MNC Credit asserted in its amended bill that: Maryland National had assigned its claims of legal malpractice to MNC Credit; the attorneys had committed acts of legal malpractice; the attorneys had breached express and implied contracts; and MNC Credit was a third-party beneficiary of the contracts between Maryland National and the attorneys. The attorneys filed a demurrer to the amended bill, asserting, among other things, that a client may not assign a legal malpractice claim to a third party, and that MNC Credit failed to plead sufficient facts to show it was a third-party beneficiary of the contract between Maryland National and the attorneys. The trial court entered a judgment sustaining the demurrer, and MNC Credit appeals.

MNC Credit, relying upon Code § 8.01-26 and court decisions in other jurisdictions, asserts that legal malpractice claims are assignable in this Commonwealth. We disagree.

The General Assembly has declared that "[t]he common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same, and be the rule of decision, except as altered by the General Assembly." Code

---

[2] MNC Credit settled its claims against Ashburton and Long.

§ 1-10.  Even though the General Assembly may abrogate the common law, the legislature's intent to do so must be "plainly manifested."  Hyman v. Glover, 232 Va. 140, 143, 348 S.E.2d 269, 271 (1986) (quoting Hannabass v. Ryan, 164 Va. 519, 525, 180 S.E. 416, 418 (1935)).  Accord  Wackwitz v. Roy, 244 Va. 60, 65, 418 S.E.2d 861, 864 (1992).

The common law of this Commonwealth did not permit the assignment of legal malpractice claims.  At common law, contracts for legal services were not assignable because of the fiduciary duties inherent in the attorney-client relationship.  See McGuire v. Brown, 114 Va. 235, 242, 76 S.E. 295, 297 (1912); Epperson v. Epperson, 108 Va. 471, 476, 62 S.E. 344, 346 (1908).

In 1977, the General Assembly enacted Code § 8.01-26 which states in relevant part:  "Only those causes of action for damage to real or personal property, whether such damage be direct or indirect, and causes of action ex contractu are assignable."  In view of the highly confidential and fiduciary relationship between an attorney and client, we hold that this statute does not abrogate the common law rule which prohibits the assignment of legal malpractice claims in this Commonwealth because the General Assembly did not plainly manifest an intent to do so.

There are a number of reasons why the common law prohibited the assignment of legal malpractice actions.  As one court has explained:

4

"The assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty, and who have never had any prior connection with the assignor or his rights. The commercial aspect of assignability of choses in action arising out of legal malpractice is rife with probabilities that could only debase the legal profession. The almost certain end result of merchandizing such causes of action is the lucrative business of factoring malpractice claims which would encourage unjustified lawsuits against members of the legal profession, generate an increase in legal malpractice litigation, promote champerty and force attorneys to defend themselves against strangers. The endless complications and litigious intricacies arising out of such commercial activities would place an undue burden on not only the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client." Goodley v. Wank and Wank, Inc., 133 Cal. Rptr. 83, 87 (Cal. Ct. App. 1976).

Furthermore, the common law rule which prohibits the assignment of legal malpractice claims safeguards the attorney-client relationship which is an indispensable component of our adversarial system of justice. As the Supreme Court of Indiana has observed:

"Unlike any other commercial transaction, the client-lawyer relationship is structured to function within an adversarial legal system. In order to operate within this system, the relationship must do more than bind together a client and a lawyer. It must also work to repel attacks from legal adversaries. Those who are not privy to the relationship are often purposefully excluded because they are pursuing interests adverse to the client's interests." Picadilly, Inc. v. Raikos, 582 N.E.2d 338, 343-44 (Ind. 1991).

5

Indeed, most courts have held that legal malpractice claims cannot be assigned because to do so would undermine the important relationship between an attorney and client. Schroeder v. Hudgins, 690 P.2d 114, 118 (Ariz. Ct. App. 1984); Goodley, 133 Cal. Rptr. at 87; Roberts v. Holland & Hart, 857 P.2d 492, 495 (Colo. Ct. App. 1993); Washington v. Fireman's Fund Ins. Co., 459 So. 2d 1148, 1148-49 (Fla. Dist. Ct. App. 1984); Brocato v. Prairie State Farmers Ins. Assoc., 520 N.E.2d 1200, 1201-02 (Ill. App. Ct. 1988); Bank IV Wichita v. Arn, Mullins, Unruh, Kuhn & Wilson, 827 P.2d 758, 764-65 (Kan. 1992); Picadilly, Inc., 582 N.E.2d at 342; Coffey v. Jefferson County Bd. Of Educ., 756 S.W.2d 155, 157 (Ky. Ct. App. 1988); Wagener v. McDonald, 509 N.W.2d 188, 191 (Minn. Ct. App. 1993); Earth Science Laboratories, Inc. v. Adkins & Wondra, P.C., 523 N.W.2d 254, 257 (Neb. 1994); Can Do, Inc. v. Manier, Herod, Hollabaugh & Smith, P.C., 922 S.W.2d 865, 868-69 (Tenn. 1996); McLaughlin v. Martin, 940 S.W.2d 261, 263-64 (Tex. App. 1997). But see Collins v. Fitzwater, 560 P.2d 1074, 1078 (Or. 1977); Hedlund Mfg. Co. v. Weiser, Stapler & Spivak, 539 A.2d 357, 358-59 (Pa. 1988).

Next, MNC Credit argues that it pled a cause of action for breach of contract against the attorneys because it alleged in its amended bill of complaint that MNC Credit was a third-party beneficiary to the contract between the attorneys and Maryland National. The attorneys, relying upon Copenhaver v. Rogers, 238 Va. 361, 384 S.E.2d 593 (1989), respond that MNC Credit's bill of complaint failed to plead sufficient facts, which, if proven

6

at trial, would establish that it was a third-party beneficiary to the contract.  We agree with the attorneys.

In Copenhaver, we considered whether beneficiaries named in a will were third-party beneficiaries to a contract between the testators and the lawyers who drafted the will.  We discussed our precedent and Code § 55-22[3] and stated the following principles, which are equally pertinent here:

> "In order to proceed on the third-party beneficiary contract theory, the party claiming the benefit must show that the parties to a contract 'clearly and definitely intended' to confer a benefit upon him.  Allen v. Lindstrom, 237 Va. 489, 500, 379 S.E.2d 450, 457 (1989); Professional Realty Corp. v. Bender, 216 Va. 737, 739, 222 S.E.2d 810, 812 (1976).  Thus, Code § 55-22 has no application unless the party against whom liability is asserted has assumed an obligation for the benefit of a third party.  Valley Company v. Rolland, 218 Va. 257, 259-60, 237 S.E.2d 120, 122 (1977); Burton v. Chesapeake Box, Etc. Corp., 190 Va. 755, 763, 57 S.E.2d 904, 909 (1950).  Put another way, a person who benefits only incidentally from a contract between others cannot sue thereon.  Valley Company, 218 Va. at 260, 237 S.E.2d at 122.  The essence of a third-party beneficiary's claim is that others have agreed between themselves to bestow a benefit

---

[3] Code § 55-22 states:

"An immediate estate or interest in or the benefit of a condition respecting any estate may be taken by a person under an instrument, although he be not a party thereto; and if a covenant or promise be made for the benefit, in whole or in part, of a person with whom it is not made, or with whom it is made jointly with others, such person, whether named in the instrument or not, may maintain in his own name any action thereon which he might maintain in case it had been made with him only and the consideration had moved from him to the party making such covenant or promise.  In such action the covenantor or promisor shall be permitted to make all defenses he may have, not only against the covenantee or promisee, but against such beneficiary as well."

7

upon the third party but one of the parties to the agreement fails to uphold his portion of the bargain." Copenhaver, 238 Va. at 367, 384 S.E.2d at 596.

Applying these principles in Copenhaver, we held that the trial court properly sustained a demurrer to the beneficiaries' motion for judgment because they failed to allege that the testators entered into a contract with their lawyers with the intent of conferring a direct benefit upon the beneficiaries of the will. Likewise, we hold here that the trial court properly sustained the attorneys' demurrer to MNC Credit's amended bill of complaint because MNC Credit failed to allege that the attorneys executed a contract with Maryland National with the intent of conferring a direct benefit upon MNC Credit. MNC Credit's allegations that the attorneys "were aware that the Loan might be transferred from [Maryland National] to a related corporation or a third party" and that the loan documents "contemplated that such a transfer might occur" are factually insufficient to establish a claim that the attorneys and Maryland National intended to confer a benefit upon MNC Credit. See Levine v. Selective Insurance Co., 250 Va. 282, 286, 462 S.E.2d 81, 83-84 (1995); Ward v. Ernst & Young, 246 Va. 317, 330-31, 435 S.E.2d 628, 634-35 (1993).

For the foregoing reasons, the judgment of the trial court will be

Affirmed.

8