## CIRCUIT COURT OF FAIRFAX COUNTY

American Recovery Corp.

v.

Hamilton P. Fox, III, et al.

Case No. (Law) 179781

Ralph F. Wackenhut et al.

v.

American Recovery Corp. et al.

Case No. (Chancery) 147521

March 9, 2000

BY JUDGE JANE MARUM ROUSH

These two related cases came on to be heard on January 28, 2000, on the following pleadings.

(1) The "Petition to Remove Richard V. Secord as Custodian and to Declare His Litigation Void *ab Initio*" filed by the defendants in Chancery No. 147521; and

(2) The "Special Plea to Dismiss" filed by the defendants in Law No. 179781.

For the following reasons, the "Petition to Remove Richard V. Secord as Custodian" is denied without prejudice and the "Special Plea to Dismiss" is sustained.

*Facts*

The two cases at bar concern a legal malpractice action by American Recovery Corporation against its former attorneys (Law No. 179781) and a chancery action to dissolve American Recovery Corporation (Chancery No. 147521).

American Recovery Corporation ("ARC") is a closely-held corporation that was incorporated in Virginia in 1992. Richard V. Secord was the president and a director of ARC until his resignation in June 1995. He continues to be the holder of one-third of ARC's outstanding shares. In addition to Secord, James M. Tully and Heide DeConde, as nominee for Thomas G. Clines ("Clines"), were shareholders and directors of ARC.

In December 1994, ARC entered into a consulting agreement with Computerized Thermal Imaging, Inc. ("CTI"). Under that consulting agreement, ARC agreed to assist CTI in locating an engineering firm that would help CTI sell thermal imaging systems in China. In addition, CTI intended to sell medical identification cards in China. ARC's compensation under the agreement included various finders' fees, stock options, and commissions. ARC expected substantial compensation if the China project proved successful.[1] Pursuant to the consulting agreement, ARC located Fluor-Daniel, Incorporated ("Fluor-Daniel"), to provide engineering and financing services to CTI in connection with the proposed China transaction.

Realizing that it was not familiar with business operations in China, CTI approached Secord about serving as a liaison between CTI and the Chinese government. The parties disagree about the extent of the discussions between Secord and CTI. Ultimately, on May 11, 1995, CTI made an offer to Secord for Secord to act as a liaison for CTI with the Chinese government. Under the personal services contract proposed by CTI, Secord would be compensated with (among other things) potentially valuable options for CTI stock. The other directors of ARC, Tully and Clines, were angered by the offer and believed that ARC should benefit from the "personal services" contract, not Secord individually. In June 1997, Secord resigned as a director and officer of ARC and entered into the personal services contract with CTI.

Tully and Clines met with attorneys at the law firm of Sutherland, Asbill & Brennan, L.L.P. ("SA&B"), to discuss ARC's rights with respect to CTI's personal services contract with Secord. SA&B advised Tully and Clines that the agreement could constitute a usurpation of corporate opportunity properly

---

[1] The *ad damnum* in the law case is presently $100,000,000. ARC has moved to increase that *ad damnum* to over $140,000,000.

belonging to ARC. Armed with that analysis, Tully and Clines demanded that ARC be the beneficiary of the liaison agreement between CTI and Secord. Donald Looper, who was then acting as both ARC's and CTI's corporate counsel, warned Tully and Clines of the negative consequences to the proposed China project if litigation were instituted to resolve the dispute.

In June 1997, CTI and Secord filed a declaratory judgment action against ARC, Tully, and DeConde in federal court in Texas. That suit was later nonsuited. Secord and CTI brought a second action against ARC, Tully, and DeConde in Texas in September 1995. That suit was later dismissed for lack of personal jurisdiction over the defendants.

On September 22, 1995, ARC, by its attorneys SA&B, filed a complaint in the United States District Court for the Eastern District of Virginia, against Secord, CTI, CTI's president, Looper, Looper's law firm, and Fluor-Daniel. Fluor-Daniel was dismissed from the suit shortly thereafter.

CTI invoked an arbitration provision in the consulting agreement between ARC and STI, and the federal court in Virginia stayed the case while arbitration proceeded. *See American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88 (4th Cir. 1996). On May 6, 1997, the arbitrator concluded that CTI had not breached the consulting agreement between ARC and CTI. The arbitrator further found that Secord's personal services contract with CTI was not a corporate opportunity available to ARC. The arbitrator found, however, that ARC was "entitled to assert its claims against CTI in the federal court action" and declined to assess fees against ARC.

The federal district court then lifted the stay of litigation. The district court concluded that ARC was collaterally estopped from relitigating the arbitrator's decisions and granted summary judgment for the defendants. The district court, however, denied the defendants' motions for sanctions under Fed. R. Civ. Proc. 11, finding that ARC and its attorneys SA&B were not unreasonable in pursuing the usurpation of corporate opportunity claim. The district court's denial of sanctions was affirmed on appeal. *American Recovery Corp. v. Looper, Reed, Mark & McGraw, Inc.*, No. 97-2622 (4th Cir. Oct. 5, 1998).

Meanwhile, in 1995, Secord filed a bill of complaint in the Circuit Court of Northumberland County for the appointment of a receiver and the dissolution of ARC. That court appointed Ralph F. Wackenhut, a certified public accountant, as receiver for ARC and transferred venue to this Court. After venue was transferred to Fairfax, Secord nonsuited that chancery action.

In January 1997, Wackenhut filed the instant interpleader action in this Court,[2] seeking compensation for his services to date as receiver and his discharge as receiver of ARC. Secord moved to have ARC dissolved. In addition, he asked that he be appointed custodian of ARC. Secord was appointed custodian of ARC by an order entered by Judge Bach of this Court on February 9, 1998. That order provided, among other things, that Secord must:

(1) File monthly status reports and accountings with the Commissioner of Accounts of Fairfax County;

(2) Make no disbursements or disposition of any funds which may come into his possession or control in his capacity as custodian of ARC until further order of the Court; and

(3) Post a bond in the amount of $150,000, cash or corporate surety, prior to assuming his duties as custodian.

*See* Order dated February 9, 1998, in Chancery No. 147521.

Following Secord's appointment as custodian of ARC, ARC has been largely dormant, save for the institution of the malpractice action against SA&B and some of SA&B's partners.

On May 31, 1998, Secord, without prior approval of this Court, entered into an agreement with Tully and Clines. Pursuant to that agreement,[3] Secord, Tully, and Clines agreed that Secord, as custodian of ARC, would sue SA&B for legal malpractice. Secord agreed to advance personally the costs of the litigation. The agreement set forth detailed provisions as to the disbursement of any recovery from the litigation.[4] The pertinent provisions of the agreement as to the disbursement of the proceeds of litigation are Sections D, E, F, and I. Those sections provide:

D. In the event of a recovery, either through a settlement or otherwise, from the suit against SAB, the recovery will be disbursed as follows:

1. All reasonable expenses and advances incurred and expended by Secord, as Custodian of ARC, shall be reimbursed to him;

2. CTI is to be reimbursed the sum of $600,000.00;

---

[2] Chancery No. 147521

[3] ARC admits the authenticity of the agreement in its responses to requests for admission.

[4] *See* Ex. 25 to the SA&B Defendants' Supplemental Memorandum in Support of Special Plea to Dismiss and Supplemental Memorandum in Support of Petition to Remove Richard V. Secord as Custodian and to Declare His Litigation Void *ab Initio.*

3. [Looper's law firm] is to be reimbursed the sum of $200,000.00;

4. Secord is to be reimbursed the sum of $349,000;

5. Tully is to be reimbursed the sum of $349,000;

6. Clines is to be reimbursed the sum of $349,000;

7. Providing the recovery is in excess of the amounts set forth in D 1 through D 6, above, then, in that event, such excess shall be applied to "accounts payable" owed by ARC, up to a limit of $144,772.00, which includes amounts owed to Dutton, Tully, Carroll, Kinsey, Jameson, Andrei, and Haynie. It is understood that this amount may be increased by additional amounts which may be determined to be oweing [sic] by ARC in accordance with accountings to be submitted and approved by the Circuit Court of Fairfax County, Virginia;

8. All funds received in excess of the total of all of the payments called for by paragraphs D 1 through D 7 are to be distributed to Secord, Clines, and Tully in the manner and form described in paragraph F, below.

E. In the event recovery is made but is insufficient to make the payments enumerated in paragraphs D 2 through D 6, then, and in that event, the recovery shall be disbursed in the following manner:

1. Secord is to be reimbursed for all funds expended in connection with the prosecution of the suit (Tully and Clines are to receive quarterly reports of those expenses);

2. The balance of the funds remaining from the recovery, after payment of the amounts provided for in E 1, above, shall be disbursed on a pro-rata basis to the parties and entities in D 2-6, so that the share of any particular person or entity shall be a percentage of the remaining funds arrived at by dividing the amount of the stated share by the total of all of the stated shares set forth in items D 2-6.

F. Notwithstanding anything herein to the contrary, any and all funds which, by the terms of this Agreement, become payable to Secord, Tully, or Clines, in excess of $150,000.00 each, but not to exceed $3,000,000.00 each, shall be used to purchase unencumbered investment common stock of [CTI], directly from the treasury of CTI, at the price prevailing on the beginning of trading on the date of disbursements provided herein. The stock so purchased shall be divided evenly among Secord, Clines, and Tully and immediately

assigned to each of them. Said funds exceeding $3,000,000 shall be divided equally between Tully, Clines, and Secord . . . .

l. The amounts and claims set forth in this Agreement shall not be changed or amended after the execution hereof.

On April 21, 1999, ARC, by its custodian Secord, filed the present legal malpractice action (Law No. 179781) against its former attorneys, SA&B, and two of its partners, Hamilton P. Fox, III, and Lovida H. Coleman, Jr.[5] In this lawsuit, Secord maintains that SA&B committed legal malpractice when it (1) advised ARC that the proposed personal services contract between Secord and CTI was a usurpation of a corporate opportunity properly belonging to ARC, and (2) instituted the lawsuit on behalf of ARC against Secord, CTI, and Fluor-Daniel (among others). Secord, as custodian of ARC, alleges that ARC's filing of the lawsuit caused CTI and Fluor-Daniel to withdraw from the China project, costing ARC millions of dollars in potential revenues.

## Discussion

In the present plea and motion under consideration, SA&B, Fox, and Coleman (hereafter the "SA&B Defendants") argue that Secord should be removed as custodian of ARC. The reasons for removal are Secord's alleged bias, his failure to be forthright with the Court prior to his appointment as custodian, his failure to pursue dissolution of ARC, and his failure to abide by the terms of the February 9, 1998, order. Further, in their "Special Plea to Dismiss," the SA&B Defendants argue that the legal malpractice case should be dismissed because Secord has, in effect, assigned a cause of action for legal malpractice, contrary to Virginia law.

The Court notes at the outset that the "Special Plea to Dismiss," although so labeled, is tantamount to a motion for summary judgment under Rule 3:18. As such, the Court will not consider the deposition testimony of Secord submitted by the defendants in support of the plea. The Court will consider the pleadings, including the Motion for Judgment and Secord's responses to requests for admission. *See generally Gay v. Norfolk & Western Ry.,* 253 Va. 212, 483 S.E.2d 216 (1997) (improper to consider deposition testimony over objection of non-moving party in support of motion functionally a motion for summary judgment). *See also* Va. Code § 8.01-420.

---

[5]   Other SA&B attorneys were initially named as defendants but have since been nonsuited.

## I. *The Petition to Remove Secord*

The SA&B Defendants have petitioned the Court to remove Secord as custodian of ARC.

The SA&B Defendants argue first that Secord is an improper custodian of ARC because of his bias against ARC and its remaining shareholders arising from the litigation instituted by ARC (acting through Tully and Clines) against Secord and others in 1995 in the United States District Court for the Eastern District of Virginia.

In addition, the SA&B Defendants maintain that Secord was not candid with the Court in seeking to be appointed as custodian. They claim he should have disclosed to the Court his intention to initiate malpractice litigation against SA&B and its attorneys to retaliate against them because of their past representation of ARC, Tully, and Clines.

The defendants contend that Secord's continued violations of the Court's February 9, 1998, Order make him an unsuitable custodian. According to the SA&B Defendants, Secord failed to file monthly reports and accountings for over a year after his appointment, failed to seek court approval prior to disbursing or committing to disburse ARC's funds, and ignored repeated requests of the Commissioner of Accounts to provide evidence that he had posted the required bond.[6]

Finally, the SA&B Defendants argue that Secord should be replaced as custodian because his use of his position as custodian to bring a legal malpractice action against the SA&B Defendants amounts to an improper assignment of a cause of action for legal malpractice. The SA&B Defendants argue that the malpractice litigation should be declared void *ab initio*.

In response, ARC claims that the SA&B Defendants have no standing to challenge Secord's fitness *vel non* as a custodian. In addition, ARC argues that Secord is a fit custodian of ARC.

The Court concludes that a custodian appointed under Va. Code Ann. § 13.1-748 may be a shareholder of the corporation who need not have the same disinterest required of a third-party receiver. The facts of this case illustrate the need on occasion to appoint a shareholder to act as a custodian of a defunct or near-defunct corporation in dissolution. Wackenhut, a disinterested third party and a CPA, was appointed a receiver for ARC by the

---

[6] The Court has verified with the Clerk's Office that the bond was in fact posted with the Clerk of the Court on February 9, 1998. The bond is maintained in a bond book in the Clerk's Office. The bond book in question is not indexed, perhaps explaining the uncertainty of the Commissioner of Accounts and the SA&B Defendants as to whether Secord posted the required bond.

Circuit Court of Northumberland County. He petitioned this Court to be relieved of those duties when his expenses in acting as receiver far exceeded any revenue or other assets of the corporation available to compensate him. *See* February 9, 1999, Chancery No. 147521 (Wackenhut was owed over $10,400; ARC had only $1,878 in funds).

Judge Bach appointed Secord as custodian in February 1998. Judge Bach advised me that he appointed Secord because there was no one else willing to act. Further, although not disclosed to the court, Judge Bach was well aware of Secord's criminal conviction as a result of Secord's involvement in what has become known as the "Iran Contra Scandal."

The Court shares the concern of the SA&B Defendants as to the seeming inactivity in concluding the dissolution of ARC. Nevertheless, the Court is not prepared to rule that as a matter of law, based only on the pleadings and the admissions, that Secord should be replaced as custodian. The Court would consider holding an evidentiary hearing to consider more fully whether Secord is the proper person to continue to act as custodian of ARC.

For the forgoing reasons the "Petition to Replace Richard V. Secord as Custodian and to Declare His Litigation Void *Ab Initio*" will be denied, without prejudice to its being renewed with the opportunity for interested parties to present evidence.

## II. *Special Plea to Dismiss*

In their "Special Plea to Dismiss" the SA&B Defendants contend that both (1) Secord's assuming control of ARC as its custodian for the avowed purpose of suing SA&B, and (2) the May 31, 1998, agreement as to the conduct and the proceeds of the malpractice litigation, are in effect an assignment of a legal malpractice claim, which is prohibited by Virginia law.

ARC replies that it has not in effect assigned its legal malpractice claim to Secord. ARC claims that Secord is properly pursuing the malpractice claim in his capacity as custodian of ARC as part of his court-ordered responsibilities in winding up the affairs of ARC. Significantly, ARC does not respond to the allegations of the SA&B Defendants that the May 31, 1998, agreement is an impermissible assignment of a legal malpractice claim.

In *MNC Credit Corp. v. Sickels*, 255 Va. 314, 497 S.E.2d 331 (1998), the Supreme Court of Virginia held that legal malpractice claims are not assignable. In so holding, the Court quoted with approval the California case of *Goodley v. Wank and Wank, Inc.*, 133 Cal. Rptr. 83 (Cal. App. 1976):

The assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty, and who have never had any prior connection with the assignor or his rights. The commercial aspect of assignability of choses in action arising out of legal malpractice is rife with probabilities that could only debase the legal profession. The almost certain end result of merchandizing such causes of action is the lucrative business of factoring malpractice claims which would encourage unjustified lawsuits against members of the legal profession, generate an increase in legal malpractice litigation, promote champerty, and force attorneys to defend themselves against strangers. The endless complications and litigious intricacies arising out of such commercial activities would place an undue burden on not only the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney-client relationship, and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client.

255 Va. at 318-19. The Supreme Court of Virginia commented further that "the common law rule which prohibits the assignment of legal malpractice claims safeguards the attorney-client relationship which is an indispensable component of our adversarial system of justice." *Id.* at 319. The Court quoted with approval the Indiana case of *Picadilly, Inc. v. Raikos*, 582 N.E.2d 338 (Ind. 1991):

Unlike any other commercial transaction, the client-lawyer relationship is structured to function within an adversarial legal system. In order to operate within this system, the relationship must do more than bind together a client and a lawyer. It must also work to repel attacks from legal adversaries. Those who are not privy to the relationship are often purposefully excluded because they are pursuing interests adverse to the client's interests.

255 Va. at 315. *See also Cardinal Holding Co. v. Deal*, 258 Va. 623 (1999) (attorney sanctioned for maintaining suit based on assigned legal malpractice claim after *MNC v. Sickels* was decided).

This Court agrees with the SA&B Defendants that the May 31, 1998, agreement between Secord, Tully, and Clines amounts to an impermissible assignment of a legal malpractice claim. The facts of the two cases at bar present just the sort of mischief feared by the Virginia Supreme Court in the *MNC v. Sickels* case. Secord, CTI, and Looper's law firm are former legal adversaries of ARC and its counsel, SA&B. Secord, CTI, and Looper's law firm were never in any sense the clients of SA&B. Indeed, the present legal malpractice suit claims that SA&B was negligent in bringing suit *against* Secord, CTI, Looper, and Looper's law firm (among others). Courts from other states have disapproved of any agreements that grant the attorney's former adversary control over the malpractice litigation. *See Tate v. Goins, Underkofler, Crawford and Langdon,* 19989 WL 549009 (Tex. App. Dallas 1998); *Zuniga v. Grace, Locke & Hebdon,* 878 S.W.2d 313 (Tex. App. San Antonio 1994); *Picadilly, Inc. v. Raikos, supra.*

The agreed division of the proceeds of any recovery by ARC under the May 31, 1998, agreement is telling.[7] If the legal malpractice claim against SA&B were truly a cause of action belonging to ARC, any recovery by ARC would be applied to the debts of the corporation and then, only after payment of the debts, to the shareholders of the corporation. *See* Va. Code Ann. §§ 13.1-742, *et seq.* Instead, pursuant to the agreement, the proceeds of the litigation after paying the expenses of the litigation go first to CTI in the amount of $600,000. Second, any proceeds remaining after CTI is paid $600,000 go to Looper's law firm to the extent of $200,000. Neither CTI nor Looper's law firm is presently a creditor of ARC. Even if any of the proceeds of the litigation were to reach the shareholders of ARC, those shareholders are *required* to invest in CTI. It is clear that the effect of the May 31, 1998, agreement is to make CTI, the former adversary of ARC and SA&B the primary beneficiary of any recovery. The Court may disregard the form of the agreement and consider its substance. This Court has little difficulty in concluding that in substance and effect the May 31, 1998, agreement is an impermissible assignment of a legal malpractice claim. In addition, the agreement amounts to a commitment of the assets and resources of ARC for which Secord did not seek this Court's advance approval as required by Judge Bach's order of February 9, 1998.

---

[7] The SA&B Defendants urge the Court to "follow the money." Reply Memorandum in Support of Special Plea to Dismiss at 5.

For the foregoing reasons, the Court will treat the "Special Plea to Dismiss" as a motion for summary judgment and grant the same.