# CIRCUIT COURT OF THE CITY OF SALEM

Realstar Realtors, L.L.C.

v.

Robert E. Glenn,
Executor of the Estate of
Roger W. Smith,
deceased

May 23, 2001

Case No. CL99-186

BY JUDGE CLIFFORD R. WECKSTEIN

The plaintiff, Realstar Realtors, L.L.C., brought suit against the Executor of the Estate of Roger W. Smith, contending that the Smith estate owes Realstar a real estate commission. After the court overruled demurrers to the plaintiff's amended motion for judgment, the defendant served discovery requests, to which the plaintiff responded. The plaintiff, Realstar, has filed with the court, and made a part of the record, its responses to the defendant's interrogatories, requests for production, and requests for admissions. *See Turner v. Lotts*, 244 Va. 554, 556-67, 556, 422 S.E.2d 765 (1992). The executor has now moved for summary judgment. The question to be decided is whether, considering the pleadings and discovery responses, there are any triable issues.

In addition to the pleadings, the exhibits filed with them, and Realstar's discovery responses, the court has had the benefit of memoranda of law and oral argument of counsel. In considering the motion for summary judgment,

I must, of course, adopt the facts and inferences from those facts that are most favorable to the nonmoving party, Realstar, unless those inferences are forced, strained, or contrary to reason. *Lindsay v. McEnearney Associates, Inc.*, 260 Va. 48, 51, 531 S.E.2d 573 (2000).

On February 1, 1995, Roger W. Smith, whose executor is the defendant in this case, signed a "Rental Management Company Agreement" with the plaintiff, Realstar Realtors. He employed Realstar "exclusively to rent and manage the property known as to 2161 Industrial Drive," in the City of Salem.

Paragraph 3.04 of the Management Agreement reads:

*Owner recognizes Agent in any negotiations relative to the property or any part thereof which may have been initiated during the term hereof and, if consummated, shall compensate Agent as hereinafter set forth.* If Owner terminates this Agreement, Agent shall receive his commission for the unexpired terms of any lease or renewals made by Agent and/or Owner and shall receive same for so long as any tenant(s) procured by Agent occupies, rents, or leases the premises. *Owner agrees to pay Agent fees for services rendered at the following rates*:

| | |
|---|---|
| 1. Management | 5% of monthly gross receipts. |
| 2. Leasing | None. |
| 3. Sale | To Be Negotiated. |
| 4. Supervision of repairs, alterations, and renovations | None. |
| 5. Out-of-office Administrative | Long Distance Phone Calls. |

(Emphasis added.)

The Management Agreement also contains a clause which states that the document is the "entire agreement of the parties with respect to the subject matter and may not be modified, amended, altered, changed, or terminated except by a written agreement signed by all of the parties," and that it "supersedes all prior agreements or understandings with respect to the subject matter between the parties contained herein." Neither plaintiff nor defendant alleges that any such subsequent written agreement exists, although Realstar argues that it is a third-party beneficiary of a lease on the property. Smith, as lessor, and Pitzer Transfer and Storage Company, as tenant or lessee, entered into that lease on February 13, 1996, while the Management Agreement was in effect.

Pitzer was purchased by the Sibila Family, Limited Partnership. The Sibila Partnership ultimately bought the property. Realstar was not a party to the lease; Realstar was not mentioned in the lease. The lease provided that another real estate broker, Sawyer Properties, Inc., would receive a sales commission of eight percent of the gross purchase price to be paid by the Smith if the property was purchased by the "lessee, its successors, or assigns."

Realstar's amended motion for judgment asserts that "it was negotiated and agreed" that the eight percent commission specified in the lease "would constitute the commission due under the Management Agreement," with that commission to be shared equally by Realstar and Sawyer.

In March of 1996, Realstar and Sawyer executed a "Commission Agreement," which purported to "clarify the Sales Commission issue on the lease dated February 13, 1996," and which stated that, if Pitzer Transfer and Storage Company should purchase the property, an eight percent sales commission would be divided equally between Sawyer Properties and Realstar.

In response to requests for admissions, Realstar states that the Management Agreement is the only writing signed by Smith which provides for it to be paid a commission on sale of the property. Although Realstar has produced a "listing agreement" authorizing it to list the property for sale during another time period, Realstar does not allege the existence of any writing, other than the Management Agreement, relevant to the period when Pitzer leased and the Sibila partnership bought the property, hiring it to sell the property or memorializing an agreement that it would sell the property or receive a commission when the property was sold. Realstar does not allege that it procured the sale to the Sibila Partnership or the lease. Realstar has produced correspondence between it and Sawyer Properties relating to Pitzer's interest in leasing the property and showing active involvement by Realstar in negotiations to extend Pitzer's lease.

A motion for summary judgment, unlike a demurrer, allows the court "to evaluate and decide the merits of a claim." *See Fun v. Virginia Military Inst.*, 245 Va. 249, 252, 427 S.E.2d 181 (1993). To be sure, summary judgment is disfavored in Virginia. A trial judge who grants summary judgment applies "a drastic remedy"; it is "unusual" for a trial court to grant summary judgment on the pleadings. *Slone v. General Motors Corp.*, 249 Va. 520, 457 S.E.2d 51 (1995); *Turner v. Lotts*, 244 Va. 554, 422 S.E.2d 765 (1992). The Supreme Court of Virginia has held that, in a tort action, a plaintiff who alleges that he was injured due to the negligence of another has no duty, in order to defeat a motion for summary judgment, to fully develop his allegations of negligence during discovery. *See, e.g., Owens v. Redd*, 215 Va. 13, 205 S.E.2d 669

(1974); *see also O'Brien v. Snow*, 215 Va. 403, 405, 210 S.E.2d 165 (1974) (no duty to fully develop claim of willful and malicious conduct in depositions or answers to interrogatories).

This is not to say, however, that summary judgment never should be granted. To the contrary, the Supreme Court has noted that:

> Rule 3:18, which provides for summary judgment, achieves a salutary purpose when used appropriately. "[Rule 3:18] was adopted to provide trial courts with authority to bring litigation to an end at an early stage, when it clearly appears that one of the parties is entitled to judgment within the framework of the case as made out by the pleadings. . . . Its purpose is to expedite litigation with as few technicalities as possible and thus avoid common law procedural tactics interposed for delay, but it does not substitute a new method of trial where an issue of fact exists." *Leslie v. Nitz*, 212 Va. 480, 481, 184 S.E.2d 755, 756 (1971) (quoting *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 5, 82 S.E.2d 588, 590 (1954)).

*Turner v. Lotts, supra*, 244 Va. 554, 556-67, 422 S.E.2d 765 (1992). Summary judgment, of course, can be granted only when there are no material facts in dispute. Rule 3:18.

When a plaintiff's answers to interrogatories demonstrate that the evidence to be presented at trial would not support the claim made in its pleadings, it is appropriate for the trial court to grant summary judgment to the defendant. *See Turner v. Lotts, supra; Chitwood v. Prudential Insurance Co. of Am.*, 206 Va. 314, 143 S.E.2d 915 (1965). In voluminous answers to interrogatories, responses to requests for production, and responses to requests for admissions, Realstar has conclusively demonstrated that it cannot prove the claim that Smith "negotiated and agreed" that the eight percent commission specified in the Smith-Pitzer-Sawyer lease "would constitute the commission due [to Realstar] under the Management Agreement," with that commission to be shared equally by Realstar and Sawyer.

Responding to interrogatories, Realstar described the evidence that it would offer if this case were to be tried. Realstar identified its potential witnesses and outlined what they would say. According to Realstar, a number of witnesses could, if allowed, testify as experts "regarding actions necessary for realtors [sic] to qualify for a commission and actions which result in seller's liability to the realtor for a commission." Several witnesses, Realstar says, would testify about Smith's past practices concerning real estate commissions, and their "past experience with Mr. Smith regarding

commissions." Witnesses would testify and documents would be offered to show that Realstar tried diligently to sell the Industrial Drive property to other purchasers. To the extent allowed by the court, witnesses would offer their conclusions that "past practice with Mr. Smith, in addition to the unambiguous language of the documents taken together, result in conclusion of definitiveness of commission and promise to pay the same," and that "the agreements, leases, and contracts, as well as past practice with Mr. Smith all substantiate Plaintiff's claim and right to a commission for the sale of the property which is the subject of this litigation." (The plaintiff's answers to interrogatories make these statements about the testimony of several witnesses.)

Realstar's responses and pleadings neither state nor imply that any witness would testify that Smith, on or after February 1, 1995, ever made any statement or signed any document other than the Management Agreement evidencing agreement to pay Realstar half of an eight percent commission on sale of the property to Pitzer or the Sibila Partnership or made any statement or signed any document evidencing negotiation to pay Realstar *any* specific commission on such a sale.

Answering an argument made by the defendant, Realstar asserts that the statute of frauds, Virginia Code § 11-1, is no bar to its action. Paragraph 3.04 of the Management Agreement, Realstar says, is a writing sufficient to satisfy the requirements of the statute of frauds. Realstar argues that this writing, signed by Smith, memorializes a contract that is missing only one term. Extrinsic evidence, it avers, could supply the missing term, the amount of the commission. *Cf. Drake v. Livesay*, 231 Va. 117, 121, 341 S.E.2d 186 (1986); *Reynolds v. Dixon*, 187 Va. 101, 106, 46 S.E.2d 6 (1948). When ruling on the defendant's motion for summary judgment, I will treat this as a quasi-factual matter. Adopting the inference most favorable to the nonmoving party, the court should assume that if there is admissible evidence to supply that missing term, the statute of frauds would be no impediment to Realstar's case.

Adopting another inference from the facts in the light most favorable to Realstar, I also will assume that the convoluted language of Paragraph 3.04 entitles Realstar to receive a commission in an amount "To Be Negotiated" on sale of the property, regardless of whether there were (in the language of the contract) any "services rendered" by Realstar in connection with the sale. *GSHH-Richmond, Inc. v. Imperial Associates*, 253 Va. 98, 101-02, 480 S.E.2d 482 (1997); *Nelson and Co. v. Taylor Heights Devel. Corp.*, 207 Va. 386, 389, 150 S.E.2d 142 (1966).

Even so, Realstar does not aver that it can present the jury with *any* evidence that it and Smith negotiated a commission to be paid to it when the

property was sold to Pitzer or its successor; Realstar does not aver that it can present the jury with *any* evidence that Realstar and Smith actually agreed that, on the sale to the Sibila Partnership, Sawyer would receive half of the commission amount to which Sawyer seemingly was entitled under the lease in satisfaction of Smith's asserted obligation under the Management Agreement to pay Realstar a sales commission. There is neither assertion nor suggestion in the pleadings or in the discovery responses — other than the passive-voice statement "it was negotiated and agreed" that half the commission due Sawyer would be the amount of Realstar's commission — of any specified commission amount or of any method or formula for determining the amount of the commission to be paid to Realstar. *See Allen v. Aetna Casualty and Surety Co.*, 222 Va. 361, 281 S.E.2d 818 (1981). (Such a commission split was, of course, "negotiated and agreed" between Realstar and Sawyer. Neither Smith nor his personal representative was part of that arrangement. Sawyer is not a party to this suit.)

Nor, it appears, would the court have to grapple with the application of the "Dead Man's Statute," Code § 8.01-397, to evidence that Realstar might wish to present, because, according to its discovery responses, Realstar simply has no evidence to support the key claim set forth in the motion for judgment. By its terms, the Management Agreement that Realstar says is the basis for finding that a commission is due to it "supersedes all prior agreements or understandings with respect to the subject matter between" Smith and Realstar; understandings arising (as Realstar says in its discovery responses) from "past practice with Mr. Smith" are, *ipso facto*, immaterial.

Realstar also asserts that it was a third-party beneficiary of the Smith-Pitzer-Sawyer lease. Courts will enforce "a third-party beneficiary's claim when the third-party establishes that the parties to the underlying contract clearly and definitely intended to confer a benefit upon the alleged beneficiary. *MNC Credit Corp. v. Sickels*, 255 Va. 314, 320, 497 S.E.2d 331, 334 (1998); *Levine v. Selective Ins. Co.*, 250 Va. 282, 286, 462 S.E.2d 81, 83 (1995); *Ward v. Ernst & Young*, 246 Va. 317, 330, 435 S.E.2d 628, 634 (1993). *See* Code § 55-22." *Caudill v. County of Dinwiddie*, 259 Va. 785, 793, 529 S.E.2d 313 (2000). However, there is nothing, express or implied, in the Smith-Pitzer-Sawyer lease from which a jury could find a clear and definite intent to confer a benefit upon Realstar. Realstar's discovery responses do not state or suggest that it has *any* evidence (other than Smith's behavior in other, earlier, different transactions) from which the jury could find that the parties to the lease had such an intent.

In my August 4, 2000, opinion letter overruling the defendant's demurrers, I noted that our Supreme Court has strongly reminded trial judges that litigation should not improperly be short-circuited before trial. Realstar, in oral argument, suggested that adherence to that principle requires the court to deny the summary judgment motion, set the case for trial, and, if the court indeed finds that the plaintiff has no proof of its assertions, strike the evidence at the end of the plaintiff's case. From the plaintiff's discovery responses, however, it is conclusively apparent that Realstar cannot make out a prima facie case. It is in the interest of the parties and of the community to terminate this case now, rather than causing the parties the expense and difficulty of trial preparation and imposing on them and the community in general the burden of selecting and swearing a panel of jurors who must leave their homes or workplaces, their daily occupations, duties, and diversions, in order to listen to evidence that, taking the plaintiff at its word in its discovery responses, cannot create a jury issue. *See Turner v. Lotts, supra,* 244 Va. at 556-67.

The Virginia standard for granting summary judgment is different from that which applies in federal courts. Virginia zealously protects the right of every individual litigant to have every triable case determined at trial and on its merits. In this case, however, I think that our Supreme Court would apply the logic expressed by the United States Supreme Court in *Celotex Corp. v. Catrett*, 477 U.S. 317, 233-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). There are circumstances, the Court said, which mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

The court, therefore, grants the defendant's motion for summary judgment.