# PRESTON SHEFFEY COPENHAVER, III, ET AL.

## V.

# FRANK W. ROGERS, JR., ET AL.

Record No. 880807

September 22, 1989

Present: All the Justices

362

*Thomas E. Albro (Christine Thomson; Smith, Taggart, Gibson & Albro*, on briefs), for appellants.

*Waller H. Horsley (Joseph M. Spivey, III; Peter W. Hull; Hunton & Williams*, on brief), for appellees.

Justice Thomas delivered the opinion of the Court.

The dispositive issue in this appeal is whether the appellants, plaintiffs below — Preston Sheffey Copenhaver, III, David Cooper Copenhaver, and John K. H. Copenhaver, suing by his next friend, Preston Sheffey Copenhaver, III (hereinafter collectively referred to as the Copenhavers) — made sufficient allegations of legal malpractice against their grandparents' lawyers to survive challenge by demurrer. The trial court held that the Copenhavers' claims were demurrable. We agree.

Because the case is before us on demurrer, we accept as true all well-pled facts and reasonable inferences arising therefrom as set forth in the Copenhavers' motion for judgment. *Hop-In Food Stores* v. *Serv-N-Save, Inc.*, 237 Va. 206, 207-08, 375 S.E.2d 753, 754 (1989). On or about November 10, 1982, Wythe M. Hull, Jr., and his wife, Lucile S. Hull, the Copenhavers' grandparents, employed Frank W. Rogers, Jr., and his law firm, Woods, Rogers & Hazlegrove (hereinafter collectively referred to as Rogers) to "effectuate an estate plan" for the Hulls. More specifically, Rogers was retained to prepare and draft wills for the Hulls, evaluate the Hulls' assets, and take steps to minimize any "transfer taxes."

Rogers prepared separate wills for the Hulls which they executed on January 6, 1983. Lucile Hull died on November 9, 1984. Her will was admitted to probate on November 15, 1984. ITEM IV(A)(1) of Mrs. Hull's will provided as follows: "I devise and bequeath the Residuary Share as follows: (1) Seventy-five percent (75%) of my Residuary Share in trust for the benefit of my daughters, ELLEN H. KEEVER and MARTHA H. COPENHAVER, in equal shares or in trust as hereinafter provided for their surviving issue per stirpes." An identical provision was contained in Mr. Hull's will. Neither provision contained trust terms. Rogers did not realize this omission until after Mrs. Hull's death. To remedy the omission in Mr. Hull's will, Rogers prepared a codicil, executed November 15, 1984, which supplied the missing trust terms.

With regard to Mrs. Hull's will, Rogers, by letter dated November 21, 1984, advised her daughters, Ellen H. Keever and Martha H. Copenhaver, that, in the law firm's opinion, the trust terms which applied to a separate trust described in ITEM IV(A)(2) of their mother's will would apply to the trust described in Item IV(A)(1). Rogers further advised that it would file a petition on behalf of Dominion Trust Company as executor and trustee under Mrs. Hull's will asking the court to adopt its interpreta-

tion of the will and to uphold the trust. However, the petition, as filed, asked the trial court to declare the trust void on the ground that it contained no trust terms. As part of the proceedings to declare the trust void, Rogers prepared answers to be used by Mrs. Hull's beneficiaries, which included the Copenhavers.

The trial court granted the relief sought by Dominion, ruling as follows:

[T]he trust attempted by the language of subparagraph (1) of paragraph (A) of ITEM IV fails for lack of conditions and terms, as a result of which failure seventy-five percent of the Residuary Share passes outright in equal shares to the two beneficiaries named therein, namely Ellen H. Keever and Martha H. Copenhaver.

Because the trust failed, the Copenhavers lost their remainder interest in the one half of the residuary share that had been intended for their mother, Martha.

The Copenhavers sued Rogers complaining of their lost remainder interest. In addition, they complained that Rogers failed to advise Mrs. Hull to make an outright distribution of her entire estate to her grandchildren in order to avoid any generation-skipping transfer tax. They also complained that Rogers gave negligent advice to Mrs. Hull concerning the creation of a marital trust, which caused her to pay maximum estate taxes, reduced the funds available for ultimate distribution to the Copenhavers, and delayed the Copenhavers' enjoyment of the assets in the marital trust until after their grandfather's death.

Mr. Hull, the Copenhavers' grandfather, died on January 31, 1987. He had executed an entirely new will on January 31, 1985, which replaced the January 6, 1983 will and its November 15, 1984 codicil. On May 7, 1986, Mr. Hull also executed a codicil to his new will. Thus, at his death, the January 1985 will and its May 1986 codicil were in effect. The Copenhavers alleged in their motion for judgment that their grandfather received negligent tax advice which resulted in a $1,600,000 increase in the portion of his estate subject to generation-skipping transfer taxes. According to the Copenhavers, Rogers gave other negligent tax advice which resulted in damages to them in the amount of $600,000.

The Copenhavers also complained about the delivery of a $250,000 check to Hollins College as provided for in Mrs. Hull's

will. They contended that they were damaged in the amount of $125,000 by this act. In short, the Copenhavers claimed total damages from their grandparents' lawyers in the amount of $3,475,000.

Rogers demurred to the motion for judgment on four grounds:

1. failure to allege that Rogers performed legal services for the Copenhavers;

2. failure to allege that the Copenhavers were in privity with Rogers;

3. failure to allege that the Copenhavers suffered injury to persons or property; and

4. failure to state a claim upon which relief could be granted.

In their brief in opposition to the demurrer, the Copenhavers stated that privity had nothing whatever to do with their case. They conceded that their claim is solely for economic loss and not for personal injury or property damage. They wrote that "privity is irrelevant in that they [were] third party beneficiaries of the wills and estate plans of their grandparents." In short, the Copenhavers represented to the trial court on brief that they were not proceeding in tort, but were proceeding solely in contract on a third-party beneficiary theory.

Given the statements and representations of the Copenhavers, the trial court would have been well within its authority to have declared the tort issue abandoned. But it did not. It ruled on that issue along with the third-party beneficiary issue. Regarding the tort issue, the trial court wrote "that the common law requirement of privity was applicable and was a prerequisite to a finding that the defendant law firm owed a duty to the plaintiffs." The trial court concluded that the Copenhavers had "no claim in tort for the negligent performance of legal services for the grandparents."

On appeal, the Copenhavers have focused virtually all of their attention on the third-party beneficiary issue.[1] But because they

---

[1] The Copenhavers also argue on brief, however, that because Rogers prepared answers to be used by the Copenhavers in the suit concerning the validity of the trust contained in their grandmother's will, Rogers had an attorney-client relationship with them. They sug-

appealed the trial court's overall ruling, we will first dispose of the privity issue.

■ We hold that the trial court was correct in ruling that the Copenhavers have no cause of action in tort against Rogers, absent privity. This is not a case involving personal injury or property damage, areas in which the common-law privity rules have been modified by statute. *See, e.g.,* Code §§ 8.01-223 and 8.2-318. Instead, this is a case involving a claim solely for economic losses. It is settled in the Commonwealth that no cause of action exists in such cases absent privity of contract. *See Sensenbrenner v. Rust, Orling & Neale,* 236 Va. 419, 425, 374 S.E.2d 55, 58 (1988); *Blake Construction Co. v. Alley,* 233 Va. 31, 36, 353 S.E.2d 724, 727 (1987). To the extent that the Copenhavers attempted to assert claims in tort against Rogers, those claims were properly rejected on demurrer.

■ The trial court also concluded that the Copenhavers failed in their efforts to assert third-party beneficiary claims against Rogers. The trial court wrote that it did "not find that a cause of action exists on the basis of a third-party beneficiary theory under the facts of this case." The trial court explained further, "that for a recovery under any third-party beneficiary claim, it must be alleged and shown that the plaintiffs were clearly intended as beneficiaries of the principal contract." The trial court then elaborated on what it meant by "clearly intended as beneficiaries," pointing out that the Copenhavers were members of an "open class without designated members" and that "under the circumstances of this case" such identification "did not provide the certainty required."

gest that, putting all else aside, this relationship permits them to sue Rogers for its handling of their grandparents' estates. This argument is without merit for three reasons.

First, assuming without deciding, that the Copenhavers, after their grandmother's death, had their own attorney-client relationship with Rogers, that relationship would not entitle them to sue Rogers for alleged wrongdoing with respect to their grandparents' estates. This is so because they would not be in privity with Rogers with respect to their grandparents' estates. *See Sensenbrenner* v. *Rust, Orling & Neale,* 236 Va. 419, 425, 374 S.E.2d 55, 58 (1988).

Second, the answers the Copenhavers refer to concerned only their grandmother's will. Those answers could not possibly serve as a basis for complaining about their grandfather's will.

Third, although the motion for judgment makes the factual allegations that Rogers prepared answers for the Copenhavers use, there is no claim for relief based on that fact. In short, the argument here advanced by the Copenhavers finds no support in their pleading and must be rejected.

The Copenhavers respond to the trial court's ruling by contending that they "were members of a sufficiently definite class of intended beneficiaries under their grandparents' wills to maintain an action for damages." They also contend that they are entitled to rely upon Code § 55-22, the third-party beneficiary statute, in asserting their claim although that statutory provision refers to an "instrument" and the contract on which they rely is oral.

In the view we take of the case, we assume without deciding that Code § 55-22 applies to oral contracts. Further, although the Copenhavers chose to focus their attention on whether they "were members of a sufficiently definite class," we need not reach that issue to decide this case. This is so because the Copenhavers left unanswered that portion of the trial court's ruling which stated that the Copenhavers failed to allege that they "were . . . beneficiaries of the *principal contract*." (Emphasis added.)

In order to proceed on the third-party beneficiary contract theory, the party claiming the benefit must show that the parties to a contract "clearly and definitely intended" to confer a benefit upon him. *Allen v. Lindstrom*, 237 Va. 489, 500, 379 S.E.2d 450, 457 (1989); *Professional Realty Corp. v. Bender*, 216 Va. 737, 739, 222 S.E.2d 810, 812 (1976). Thus, Code § 55-22 has no application unless the party against whom liability is asserted has assumed an obligation for the benefit of a third party. *Valley Company v. Rolland*, 218 Va. 257, 259-60, 237 S.E.2d 120, 122 (1977); *Burton v. Chesapeake Box, Etc. Corp.*, 190 Va. 755, 763, 57 S.E.2d 904, 909 (1950). Put another way, a person who benefits only incidentally from a contract between others cannot sue thereon. *Valley Company*, 218 Va. at 260, 237 S.E.2d at 122. The essence of a third-party beneficiary's claim is that others have agreed between themselves to bestow a benefit upon the third party but one of the parties to the agreement fails to uphold his portion of the bargain.

In this case, there is no allegation that the Hulls entered into a contract with Rogers with the intent of conferring a direct benefit upon the Copenhavers. Nor are there any other allegations from which such an inference can be drawn. The Copenhavers' only allegation which makes direct reference to the terms of the contract between the Hulls and Rogers reads as follows:

On or about November 10, 1982 and thereafter, defen-

dants undertook for consideration paid to them to effectuate an estate plan for Wythe M. Hull, Jr. and Lucile S. Hull, including preparation and drafting of wills for them. Said undertaking included an evaluation of the Hulls' assets and was in part intended to minimize transfer taxes.

The motion for judgment contains other allegations which include the terms "beneficiaries" and "third-party beneficiaries." These allegations are relied on by the Copenhavers in support of their contention that they have successfully asserted a third-party beneficiary contract claim. However, consideration of the precise language used by the Copenhavers demonstrates that their allegations fall far short of what they now contend they claimed. In paragraph 15 of the motion for judgment, the allegation is that "defendants owed plaintiffs, as *intended third-party beneficiaries of the estate* of Lucile S. Hull or otherwise, a duty of reasonable care;" in paragraph 22, that "defendants owed plaintiffs, as *intended beneficiaries of the estates* of Lucile S. and Wythe M. Hull, Jr., or otherwise, a duty of reasonable care . . . to minimize transfer taxes and maximize the enjoyment of the assets by the *intended beneficiaries;*" in paragraph 31, that "defendants owed plaintiffs as *intended third-party beneficiaries of the estate* of Wythe M. Hull, Jr., or otherwise a duty of reasonable care;" in paragraph 36, that "[d]efendants owed plaintiffs as intended *third part [sic] beneficiaries of the estate* of Lucile S. Hull or otherwise a duty of reasonable care;" and in paragraph 38, that "[e]ach and every negligent act and omission alleged in this motion for judgment . . . constituting legal malpractice is a breach of contract."

■ There is a critical difference between being the intended beneficiary of an estate and being the intended beneficiary of a contract between a lawyer and his client. A set of examples will illustrate the point: A client might direct his lawyer to put his estate in order and advise his lawyer that he really does not care what happens to his money except that he wants the government to get as little of it as possible. Given those instructions, a lawyer might devise an estate plan with various features, including *inter vivos* trusts to certain relatives, specific bequests to friends, institutions, relatives and the like. In this first example, many people and institutions might be beneficiaries of the estate, but none could fairly be described as beneficiaries of the contract between the client and his attorney because the intent of that arrangement

was to avoid taxes as much as possible. By contrast, a client might direct his lawyer to put his estate in order and advise his lawyer that his one overriding intent is to ensure that each of his grandchildren receive one million dollars at his death and that unless the lawyer agrees to take all steps necessary to ensure that each grandchild receives the specified amount, the client will take his legal business elsewhere. In this second example, if the lawyer agrees to comply with these specific directives, one might fairly argue that each grandchild is an intended beneficiary of the contract between the client and the lawyer.

■ The Copenhavers never alleged that their grandparents and Rogers entered a contract of which they were intended beneficiaries.[2] Thus, the motion for judgment utterly fails to allege a third-party beneficiary contract claim.[3]

In *Stowe v. Smith*, 184 Conn. 194, 441 A.2d 81 (1981), a case relied on by the Copenhavers, a motion to strike a complaint was originally granted with regard to a third-party beneficiary claim against a lawyer who had allegedly failed to prepare a will pursuant to his client's instructions. The motion to strike the complaint was granted because the complaint "lacked an allegation that the defendant [attorney] intended to assume a direct obligation to the plaintiff." *Id.* at 195-96, 441 A.2d at 82. The plaintiff then filed an amended complaint which contained the allegation "that the testatrix and the defendant intended that the defendant, by his agreement to prepare her will in accordance with her instructions,

---

[2] An examination of the Copenhavers' court papers reveals that as the litigation proceeded, they became cognizant of the difference between being the beneficiary of an estate and being the beneficiary of a contract. As discussed above, the motion for judgment makes reference to the Copenhavers' being intended beneficiaries of their grandparents *estate.* In their brief in opposition to the demurrer, the Copenhavers described themselves as "intended third party beneficiaries of their grandparents' *estates and of the contracts* of representation between defendants" and their grandparents. After the trial court had sustained the demurrer, the Copenhavers filed a motion for reconsideration in which they referred to themselves as "intended third-party beneficiaries of the *contracts* between" their grandparents and the defendants. In their appeal brief, the Copenhavers revert to the dual description as beneficiaries of the *estate and the contract.* Of course, we are concerned here with what is alleged in the motion for judgment. (Emphasis added throughout.)

[3] The allegation in paragraph 38 that each negligent act constituting legal malpractice is a breach of contract adds nothing to the third-party beneficiary claim. This is so because the essential allegation that the Hulls and Rogers entered a contract to confer benefits on the Copenhavers was not made anywhere in the motion for judgment. As a result, the contention that the negligent acts were breaches of contract cannot add that which is missing.

would assume a direct obligation to the plaintiff." *Id.* at 196, 441 A.2d at 82. The trial court struck the amended complaint. The Supreme Court of Connecticut reversed, ruling that the new allegation was sufficient to state a third-party beneficiary cause of action. *Id.* at 200, 441 A.2d at 84. As demonstrated above, the Copenhavers make no allegations akin to that which was ultimately found acceptable in *Stowe.*

The Copenhavers also rely on *Guy* v. *Liederbach,* 501 Pa. 47, 459 A.2d 744 (1983), as an example of a case from a strict privity jurisdiction which nevertheless allows third-party beneficiary claims against attorneys. In our view, *Guy,* instead of supporting the Copenhavers' position, dramatizes the difficulties with their case.

During oral argument, the Copenhavers stated that they seek no change in the rules concerning third-party beneficiary contract claims in Virginia. Yet *Guy* makes clear that in order to permit a recovery, Pennsylvania was required to change its traditional rules on the subject.

In *Guy,* the court concluded that under previously existing Pennsylvania law as set forth in *Spires* v. *Hanover Fire Insurance Co.,* 364 Pa. 52, 70 A.2d 828 (1950), a third-party beneficiary claim could not be successfully asserted:

> Under the *Spires* analysis, a beneficiary of a will would be a third party beneficiary with standing only if the testator and the attorney had a written contract to write a will, *and the contract indicated the intention of both parties to benefit the legatee.* The fact that the beneficiary is named in the will is not relevant to third party status. The will is not the contract, but rather that which is contracted for. Furthermore, even if the naming of the legatee in the will is taken as indicating the testator's intent to benefit the legatee, it cannot be taken to indicate that the drafting attorney intended to confer any benefit. It is not at all clear that an attorney ever intends to benefit a third party under a testator's will in the sense required in *Spires.* Thus it is very unlikely that a beneficiary could ever bring suit under the *Spires* requirement.

*Guy,* 501 Pa. at 59, 459 A.2d at 750-51 (emphasis added). Only by overruling *Spires* was the Supreme Court of Pennsylvania able

to permit a third-party beneficiary contract claim against the attorney in question. *Id.* at 60, 459 A.2d at 751.

■ Unlike the court of our sister state, we are unwilling to overrule our existing law concerning third-party beneficiary contract claims in order to accommodate the claim asserted by the Copenhavers. Even if it is permissible to make oral third-party beneficiary contracts which are entitled to the protection of Code § 55-22, and even if that code section is highly remedial and should be liberally construed — the instant claims are plainly inadequate. We agree with the Supreme Court of Pennsylvania that under traditional rules, it will no doubt be difficult for a litigant, in a case of this kind, to meet the requirements of third-party beneficiary claims. We hold that the Copenhavers' claim does not meet those requirements.

The judgment of the trial court will be

*Affirmed.*