## CIRCUIT COURT OF FAIRFAX COUNTY

Lexcadia Capital, L.L.C.

v.

Next Generation Fund, L.L.C., et al.

June 1, 2006

Case No. CL-2005-5342

BY JUDGE JONATHAN C. THACHER

This matter came on January 27, 2006, for a hearing on Defendants' Demurrer. After considering counsels' arguments and briefs and reviewing the applicable law, the Court reaches the findings and conclusions stated below.

### I. *Background Facts*

This case is an action by Lexcadia Capital, L.L.C. ("Lexcadia"), as the assignee of interests in preferred stock of a company called Earthwalk, against defendants Next Generation Fund, L.L.C. ("NextGen"), NextGen Capital, L.L.C. ("NG Capital"), Zimri C. Putney, Carlyle D. Eckstein, William Gianopulos, and Charles B. Dixon. The assignors of the stock interests are Acadia Investments, L.C. ("Acadia") and Loren W. Hershey. Acadia and Hershey assigned their interests in Earthwalk stock to Lexcadia by written assignment on January 2, 2004.

According to the Motion for Judgment, NextGen is a venture capital firm which held itself out to be an established and experienced venture firm with many earlier investments in "portfolio companies" that were being prepared and assisted by NextGen to go public at a substantial premium on NextGen's investments. NextGen had invested $1,000,000 in Earthwalk on December 29, 1999, for 100,000 shares of Class A preferred stock, pursuant to a Stock Purchase Agreement (the "NextGen SPA"). NextGen, in its discussions with Hershey during October through December 1999, invited and encouraged Hershey and Acadia to invest in one of their portfolio companies and offered Earthwalk as one of those companies. Hershey and Acadia were interested in Earthwalk because it was an established company with sales-based revenues and also because it had a new, exciting product that was about to be launched. Further, defendant Eckstein, one of the Managing Directors of NextGen, told Hershey that certain undisclosed investors were considering buying control of Earthwalk or, alternatively, that an IPO of Earthwalk would be possible in as little as six months.

Lexcadia alleges that, based on the representations of NextGen, and "relying on" their representations about the potential of Earthwalk, Acadia and Hershey decided to invest $1,000,000 in Earthwalk preferred stock, but "only if the investment were on the same basis as NextGen's and only if they would be protected by NextGen's venture capital position and rights as to Earthwalk." Motion for Judgment, at 5. Accordingly, Acadia and Hershey entered into their own Stock Purchase Agreements, one entered into on February 16, 2000, and another on May 30, 2000, collectively referred to in this opinion as the "Lexcadia SPA"). Thus began, according to Lexcadia, a series of interrelated agreements allegedly designed to put Lexcadia on the same footing as NextGen regarding the investment in Earthwalk.

First, as mentioned above, Hershey and Acadia entered into a Stock Purchase Agreement to purchase 100,000 shares of Earthwalk Class A preferred stock for $1,000,000 on February 16, 2000. That agreement was amended as of March 6, 2000. Pursuant to that amendment, and as a result of a limit on the number of Series A preferred shares Earthwalk could issue, Hershey and Acadia were actually issued 100,000 of a new class of preferred stock, called Series B. Hershey and Acadia made a second investment in Earthwalk on May 30, 2000, in the amount of $1,050,000 for 100,000 pursuant to a second Stock Purchase Agreement.

On February 16, 2000, NextGen executed a Consent and Waiver (the "NextGen Consent"). The parties offer contesting views about the effect of this document, which will be more fully described and analyzed in the Discussion section of this opinion.

On March 6, 2000, Hershey, Earthwalk and its founders, and NextGen entered into an Exchange Agreement and Waiver (the "Exchange Agreement"). Pursuant to this agreement, Hershey and Acadia were issued the 100,000 shares of Series B stock, and NextGen exchanged its Series A shares for an equal number of the new Series B shares.

Also on March 6, 2000, Hershey, Acadia, Earthwalk and its founders, and NextGen entered into an Amended and Restated Right of First Refusal and Co-Sale Agreement (the "Co-Sale Agreement"). Like the NextGen Consent, the effect of this agreement is in dispute and will be more fully described and analyzed in the Discussion section of this opinion. The Co-Sale Agreement, according to Lexcadia, "provided additional, joint protections for both NextGen and Hershey and Acadia by limiting and controlling the sale of Earthwalk shares by the founders prior to an IPO or sale of substantially all of Earthwalk." Motion for Judgment, at 7. Lexcadia alleges that the Co-Sale Agreement, which was an amendment to an earlier co-sale agreement between only NextGen and Earthwalk and its founders "was for the specific purpose of including Hershey and Acadia . . . on an equal and parallel basis with NextGen." *Id.*

Lexcadia states that "[t]he intended purpose of the Exchange Agreement, the [NextGen] Consent, and the Co-Sale Agreement was to have Hershey and Acadia own the same class of Earthwalk preferred shares as NextGen so that Hershey and Acadia would be protected from unequal and discriminatory treatment as a preferred shareholder of Earthwalk." *Id.*

On July 25, 2000, Eckstein and Hershey had a breakfast meeting "to discuss the status of the Earthwalk investments." *Id.* at 9. Lexcadia alleges that, at that meeting, Eckstein told Hershey that "he, NextGen, NG Capital, and Putney, together with two fellow Earthwalk board members of Eckstein's, Gianopulos and Dixon, were planning to take corporate and operational control of Earthwalk" from its founders. *Id.* Lexcadia alleges that these defendants planned to use "a threat of criminal prosecution based on the findings of a special, forensic accounting report" issued on August 5, 2000, "purporting to show certain questionable actions by Earthwalk's employees and management," to accomplish the takeover. *Id.* at 10. Lexcadia also alleges that "one or more of Eckstein, Gianopulos, and/or Dixon, as Earthwalk directors, caused Earthwalk to request" the report. *Id.* Further, Lexcadia alleges that "the defendants had prepared, and showed to Hershey, a detailed legal analysis of criminal laws allegedly violated by Earthwalk's employees and management." *Id.* Hershey told the defendants that he would not participate in the plan. Despite this, the defendants allegedly went ahead with their plan, but were unsuccessful in taking control of Earthwalk.

On August 31, 2000, NextGen had its counsel send Earthwalk a letter, which referenced the accounting report, demanding that Earthwalk repurchase NextGen's shares "or face a lawsuit." *Id.* at 11. When Earthwalk refused, NextGen again threatened to, and actually did, on January 26, 2001, file a lawsuit compelling the buyback of NextGen's shares, as well as the common shares of Gianopulos and Dixon.

On February 1, 2000, NextGen, Earthwalk, and its founders, Gianopulos and Dixon entered into a Stock Redemption, Settlement, and Release (the "Redemption Agreement") ending the lawsuit. The Redemption Agreement was amended on February 15, 2001. It required Earthwalk to pay NextGen, Gianopulos, and Dixon "about $1.3 million," which "virtually bankrupted Earthwalk." *Id.* at 11-12.

Lexcadia alleges five counts in its Motion for Judgment, as follows:

Count I: Breach of Contract by NextGen of their obligations under the NextGen SPA to which Lexcadia's Assignors were Third-Party Beneficiaries. The alleged breach occurred when, not earlier than NextGen's August 31, 2000, demand to have its preferred shares redeemed by Earthwalk, NextGen "repudiated and/or materially breached those terms of the NextGen SPA that were intended to benefit Hershey and Acadia as third-party beneficiaries." *Id.* at 13. The material terms of the NextGen SPA that were allegedly repudiated and/or breached by NextGen include "its provisions . . . obligating NextGen to provide, in part through Eckstein serving Earthwalk as a director, the advice, experience, support, and guidance Earthwalk desired and needed to progress to a point where it could offer itself for sale as part of an IPO or otherwise." *Id.* at 14. Lexcadia alleges loss of value of its preferred shares in Earthwalk in the amount of $3,100,000 under this count.

Count II: Tortious Injury to Plaintiff's Property by All Defendants. Lexcadia alleges that the defendants conspired with one another to injure Lexcadia's property by (1) forcing Earthwalk to divert $1.3 million of paid-in capital to NextGen through threats of criminal liability, (2) NextGen repudiating its obligations to Hershey and Acadia under the NextGen SPA, (3) the officers of NextGen who were directors of Earthwalk breaching their fiduciary duties to the corporation, (4) causing Earthwalk to breach its obligations to its preferred shareholders, including illegal payments to common shareholders, and (5) preventing Earthwalk from developing into an IPO candidate with the support of NextGen. Lexcadia claims damages of $2,050,000 under this count.

Count III: Conspiracy under Va. Code §§ 18.2-499 and 18.2-500 Against All Defendants. Lexcadia alleges that the defendants maliciously took concerted action to take control of Earthwalk and to cause Earthwalk to make

unlawful payments to NextGen, Gianopulos, and Dixon for redemption of shares that Earthwalk was not authorized to redeem. Lexcadia alleges that this conspiracy caused injury to Lexcadia's property and business in the amount of $2,050,000. Lexcadia seeks treble damages of $6,150,000 under this count.

Count IV: Tortious Interference with the Earthwalk Contracts and Lexcadia's Prospective Economic Advantage by all Defendants. The allegations in this Count are essentially the same as Count III, with the addition of the allegation that Earthwalk would normally have progressed to the point that an IPO or a sale would be possible, which would have resulted in a premium being received on Lexcadia's investment. Thus, Lexcadia alleges that the conspiratorial conduct of the defendants interfered with Lexcadia's prospective economic advantage and expectancy on its investments with Earthwalk. Lexcadia seeks $2,050,000 under this count.

Count V: Tortious Interference by Gianopulos and Dixon with the NextGen SPA, to which Lexcadia's Predecessors were Third-Party Beneficiaries. Lexcadia alleges that Gianopulos and Dixon conspired with one another and others (known and unknown) to interfere with Acadia and Hershey's contracts with NextGen by, *inter alia*, causing NextGen to repudiate its obligations to Hershey and Acadia, causing Eckstein to breach his fiduciary duties to Earthwalk, and preventing Earthwalk from developing into an IPO candidate with the support that NextGen was purportedly obligated to provide under the NextGen SPA. Lexcadia alleges that by these actions, Gianopulos and Dixon conspired to interfere with Lexcadia's prospective economic advantage, causing damage in the amount of $2,050,000.

## II. *Discussion*

### A. *Standard of Review*

"A demurrer admits the truth of all material facts properly pleaded. Under this rule, the facts admitted are those expressly alleged, those which fairly can be viewed as impliedly alleged, and those which may be fairly and justly inferred from the facts alleged." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277 (1993). "On demurrer, a court may examine not only the substantive allegations of the pleading attacked but also any accompanying exhibit mentioned in the pleading." *Id.* However, "a court considering a demurrer may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are part of the pleadings." *Ward's Equipment, Inc. v. New Holland North America, Inc.*,

254 Va. 379, 383, 493 S.E.2d 516 (1997). Further, a demurrer does not admit the correctness of the pleader's conclusions of law. *Russo v. White*, 241 Va. 23, 24, 400 S.E.2d 160 (1991). Construction of clear, unambiguous contract terms is a question of law. *Bentley Funding Group, L.L.C. v. SK&R Group, L.L.C.*, 269 Va. 315, 324, 609 S.E.2d 49 (2005).

## B. *Defendants' Demurrer*

Defendants NextGen, NG Capital, Putney, Eckstein, Gianopulos, and Dixon jointly demur to all five Counts in the Motion for Judgment in a blanket fashion. For purposes of clarity, I will address each Count individually, taking into account the relevant arguments from Defendants' Demurrer, Lexcadia's Opposition, Defendants' Reply, and the arguments of counsel in open court as they pertain to each Count respectively.

### 1. *Demurrer as to Count I*

As stated above, Count I of Lexcadia's Motion for Judgment alleges that NextGen breached the NextGen SPA, to which Lexcadia claims to be a third-party beneficiary. Therefore, the material issue is whether Count I adequately alleges that Lexcadia is a third-party beneficiary of the NextGen SPA, as Lexcadia would lack standing to enforce any of NextGen's purported obligations to Earthwalk, absent third-party beneficiary status. For the reasons stated below, Defendants' Demurrer as to Count I of Lexcadia's Motion for Judgment is sustained with prejudice.

Lexcadia admits that the Lexcadia SPA does not afford the protections upon which Count I (and Count V, to be discussed later) is based. Further, Lexcadia does not allege that the NextGen SPA by its own terms creates third-party rights in Lexcadia. Therefore, this Court must determine whether, accepting Lexcadia's allegations as true, the parties to the NextGen SPA otherwise "clearly and definitely" intended to confer a third-party benefit to Lexcadia. *Copenhaver v. Rogers*, 238 Va. 361, 367, 384 S.E.2d 593 (1989). It is well-settled in Virginia that "[a] person who benefits only incidentally from a contract between others cannot sue thereon." *Id.* Thus, a third-party "cannot maintain an action upon a contract merely because he would receive a benefit from its performance or because he is injured by a breach thereof." *Valley Landscape Co. v. Rolland*, 218 Va. 257, 262, 237 S.E.2d 120 (1977). Indeed, "[t]he provision sought to be invoked must have been inserted in the contract directly or primarily for [the third-party's] benefit." *Id.*

Count I of Lexcadia's Motion for Judgment fails for several reasons. First, there is no actual obligation in the NextGen SPA that is alleged to have been breached. While Lexcadia claims that NextGen was obligated to provide advisory support to Earthwalk needed to progress to the point where Earthwalk would be ready for sale as part of an IPO or otherwise, there is no such obligation contained in the NextGen SPA. The NextGen SPA merely obligates NextGen to "provide assistance to [Earthwalk] in identifying investors in NextGen who can provide strategic and business advice to [Earthwalk]." Motion for Judgment, Ex. A, ¶ 8(a). There is no allegation in the Motion for Judgment that NextGen failed to identify such investors. Further, the Lexcadia SPA states that Hershey, individually and through his controlling interest in Acadia, is a "strategic investor in the company and committed to its long-term prosperity and success," which is consistent with the obligation in the NextGen SPA to identify such investors. In addition, the NextGen SPA contains an integration clause, stating that the NextGen SPA "embodies the entire agreement and understanding between the parties with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to such subject matter." Motion for Judgment, Ex. A, ¶ 16. Thus, even if there was discussion of an obligation prior to the execution of the NextGen SPA such as the purported obligation that Lexcadia alleges, the integration clause would appear to make such an obligation a nullity.

Second, although not necessary to the Court's decision, an examination of the terms of the NextGen Consent, the Exchange Agreement, and the Co-Sale Agreement does not demonstrate a clear and definite intent to create third-party rights to the NextGen SPA in Lexcadia's assignors.

The unambiguous language of the NextGen Consent does nothing to show a clear and definite intent to bestow third-party rights in the NextGen SPA on Lexcadia. An analysis of that document reveals its purpose and effect quite clearly. The second, third, and fourth paragraphs state that Earthwalk, pursuant to the NextGen SPA, "agreed not to issue additional shares of Series A Preferred Stock to any party other than NextGen without NextGen's prior written consent," among other things. Motion for Judgment, Ex. D, ¶¶ 2-4. Therefore, because Earthwalk wished to issue stock to Hershey and Acadia, NextGen's consent was necessary; this apparent purpose falls far short of clearly and definitely showing intent to create third-party rights in Lexcadia's assignors. If anything, the NextGen Consent actually appears to contradict Lexcadia's allegation, in that it states that Earthwalk "wishes . . . to provide Hershey and Acadia with certain rights on *similar* terms and conditions as the NextGen Stock Purchase Agreement, as set forth in a *Stock Purchase Agreement by and between the Corporation, Hershey, Acadia, and the*

*Shareholders*," referring to the Lexcadia SPA. *Id.* (emphasis added). In other words, according to the express language of the NextGen Consent, Lexcadia's assignors would have similar, not the same, rights as NextGen, and must look to their own Stock Purchase Agreement, rather than the NextGen SPA, for those rights, as argued by defendants' counsel. Further, the NextGen Consent expressly states, "Except as set forth herein, this Consent and Waiver shall have *no effect whatsoever on the NextGen Stock Purchase Agreement."* *Id.* (emphasis added). The clear, unambiguous language of the NextGen Consent does nothing to demonstrate any intent to bestow third-party beneficiary status upon Lexcadia, and in fact appears to contradict Lexcadia's allegations to that effect.

Similarly, the Exchange Agreement does nothing to demonstrate that the parties to the NextGen SPA intended to make Lexcadia a third-party beneficiary. Lexcadia's Motion for Judgment states that *due to a technical limit on the number of shares* that Earthwalk could issue, Lexcadia's assignors were actually issued shares of a new class of preferred stock, designated as Series B, rather than Series A. With this in mind, an examination of the Exchange Agreement leads to the conclusion that it is simply an instrument drafted to facilitate Hershey and Acadia's purchase of stock from Earthwalk, by converting NextGen's shares to Series B because of the technical limit on the number of shares Earthwalk could issue, as alleged in the Motion for Judgment. *See* Motion for Judgment, at 7. This purpose again falls short of evincing a clear and definite intent to make Lexcadia a third-party beneficiary to the NextGen SPA. Further, the Exchange Agreement expressly states that the NextGen SPA "shall remain in full force and effect" with certain modifications that appear to be for the purpose of making the language of the NextGen SPA consistent with the exchange of stock. Motion for Judgment, Ex. E, ¶ 4. It does not mention any modification relating to creating third-party rights in Lexcadia's assignors.

Similarly, the Co-Sale Agreement does not demonstrate an intent to create third-party rights in Lexcadia. Rather, it simply amends an earlier co-sale agreement between only NextGen and Earthwalk (and its founders), due to the sale of shares to Hershey and Acadia. The stated purpose of the Co-Sale Agreement is to "protect the management and control of [Earthwalk] from influence by any person not acceptable to [Earthwalk] or the Purchasers and to assist the Purchasers in selling their shares if they so desire." Motion for Judgment, Ex. F. It does not mention anything having to do with making Lexcadia's assignors third-party beneficiaries to the NextGen SPA.

Simply put, the language of the NextGen Consent, the Exchange Agreement, and the Co-Sale Agreement does not support Lexcadia's rather

conclusory allegation that those instruments were intended to create third-party rights in Lexcadia's assignors. In fact, Lexcadia itself merely alleges that the purpose of these instruments was "to have Hershey and Acadia own the same class of . . . shares as NextGen so that Hershey and Acadia would be protected from unequal and discriminatory treatment as a preferred shareholder of Earthwalk." Motion for Judgment, at 7. This purpose is not equivalent to a creation of third-party rights in the NextGen SPA.

Finally, for Lexcadia to successfully lay claim to third-party beneficiary status, "[t]he provision sought to be invoked must have been inserted in the contract directly or primarily for [the third-party's] benefit." *Valley Landscape*, 218 Va. at 262. As discussed above, this Court can find no obligation on the part of NextGen pursuant to the NextGen SPA that NextGen provide Earthwalk with advisory support needed to progress to a sale or IPO. However, even if such an obligation were to be found in the NextGen SPA, Lexcadia would still not be entitled to sue on the agreement as a third-party beneficiary. Lexcadia admits that Hershey and Acadia did not invest in Earthwalk until after the NextGen SPA was executed. Although this fact is not dispositive in and of itself, a close reading of Lexcadia's Motion for Judgment demonstrates that the purported obligation to guide Earthwalk to a sale or an IPO, even if actually found in the NextGen SPA, could not have been inserted in the contract to directly benefit Lexcadia's assignors. First, Lexcadia states that Earthwalk was one of NextGen's "portfolio companies" that "were being prepared and assisted by NextGen to `go public' at a substantial premium on *NextGen's* investments." Motion for Judgment, at 4 (emphasis added). Thus it appears from Lexcadia's own allegations that the direct purpose of any guidance given by NextGen to Earthwalk was to realize a profit *for NextGen*. Second, Lexcadia states that Hershey and Acadia had not committed to investing in Earthwalk until after the NextGen SPA was already entered into; indeed, Hershey "read and relied upon" the NextGen SPA in his decision to invest in Earthwalk. *Id*. at 6. Further, Hershey and Acadia's first investment in Earthwalk was not made until March 6, 2000, several months after the NextGen SPA was entered into. *Id*. Lexcadia's allegations; aside from conclusory statements that Hershey and Acadia were intended third-party beneficiaries of the NextGen SPA, show Lexcadia's assignors to be, at most, intended incidental beneficiaries of the NextGen SPA who may have realized a profit on their investment in Earthwalk but for NextGen's purported breach. A clear intent to benefit a third-party must appear to enable the third-party to sue on the contract; incidental beneficiaries cannot maintain an action thereon. *Valley Landscape*, 218 Va. at 262.

### 2. *Demurrer as to Count II*

As stated above, Count II of Lexcadia's Motion for Judgment alleges tortious injury to Lexcadia's property, loss of value of its shares, against all defendants. For the reasons stated below, the demurrer to Count II is also sustained with prejudice.

First, to be considered a tortious injury to property, (1) the injury must be against and affect directly the plaintiff's property; (2) the plaintiff must sue only for the direct injury; and (3) the injury must be the very first injury that results from the wrongful act. *Willard v. Moneta Bldg. Supply, Inc.*, 262 Va. 473, 479, 551 S.E.2d 596 (2001). Here, the injury to Lexcadia's property is not direct; it is the result of Earthwalk losing money and/or not succeeding in the way Lexcadia's assignors hoped it would, i.e., being sold or becoming an IPO candidate. The injury that Lexcadia alleges is not the kind of injury contemplated by Va. Code § 8.01-243.

Second, Count II does not name the "obligations to Hershey and Acadia" that were repudiated. If taken to mean the purported obligations named in Count I, i.e., to give guidance and advisory support to Earthwalk, such obligations are not contained in the NextGen SPA, as stated in the previous section. Also, one of the tortious acts alleged in this Count is "preventing Earthwalk from developing into an IPO candidate with the support that NextGen was obligated to provide." Motion for Judgment, at 15. However, as discussed above, there is no such obligation contained in the NextGen SPA. Further, this also would not constitute a direct injury to Lexcadia's property, but rather an indirect one.

Third, Lexcadia alleges as part of Count II that the defendants "caused" the non-company directors of Earthwalk to breach their fiduciary duties. To the extent that this Count alleges breach of fiduciary duty on the part of Earthwalk directors, such a claim cannot be brought by Lexcadia independently, but rather must be brought as a shareholder derivative suit. *See Simmons v. Miller*, 261 Va. 561, 544 S.E.2d 666 (2001).

### 3. *Demurrer as to Count III*

Count III of Lexcadia's Motion for Judgment alleges a conspiracy against all defendants under Va. Code § 18.2-499 and § 18.2-500 under essentially the same facts as Count II. Lexcadia alleges that the defendants maliciously took concerted action to take control of Earthwalk and to cause Earthwalk to make unlawful payments to NextGen, Gianopulos, and Dixon for redemption of shares that Earthwalk was not authorized to redeem. Lexcadia

alleges that this conspiracy caused injury to Lexcadia's property and business in the amount of $2,050,000. For the reasons stated below, the demurrer to Count III is also sustained with prejudice.

Va. Code § 18.2-499(A) provides, in pertinent part:

> Any two or more persons who combine, associate, agree, mutually undertake, or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business, or profession by any means whatever . . . shall be jointly and severally guilty of a Class 1 misdemeanor.

Va. Code § 18.2-500(A) provides, in pertinent part:

> Any person who shall be injured in his reputation, trade, business, or profession by reason of a violation of § 18.2-499, may sue therefor and recover three-fold the damages by him sustained, and the costs of suit, including a reasonable fee to plaintiff's counsel, and without limiting the generality of the term, "damages" shall include loss of profits.

The plain language of Va. Code § 18.2-499 states that the alleged conspiracy must have been "for the purpose of" injuring the plaintiff's business. Count III alleges that the defendants conspired to take control of Earthwalk and/or cause unjustified and unlawful payments to redeem stock. This does not sufficiently allege that the defendants conspired "for the purpose of" injuring Lexcadia's assignors. At most, this Count alleges that the defendants conspired for the purpose of taking over Earthwalk, which harmed Earthwalk, which in turn indirectly harmed Lexcadia. Such a claim cannot be brought by Lexcadia, due to Virginia's adherence to the majority rule that "an action for injuries to a corporation cannot be maintained by a shareholder on an individual basis and must be brought derivatively." *Simmons*, 261 Va. at 573, 576.

### 4. *Demurrer as to Count IV*

Count IV of Lexcadia's Motion for Judgment alleges tortious interference with the Earthwalk contracts and Lexcadia's prospective economic advantage against all defendants. The factual allegations underlying this claim are essentially the same as those in Count III, forcing (through threats of criminal prosecution) Earthwalk to return $1.3 million of paid-in capital to NextGen, Gianopulos, and Dixon, causing Earthwalk to breach its

obligations to its preferred shareholders, and making illegal payments to common shareholders, with the addition of the allegation that Earthwalk would normally have progressed to the point that an IPO or a sale would be possible, which would have resulted in a premium being received on Lexcadia's investment. For the reasons stated below, the demurrer to Count IV is overruled.

To successfully claim tortious interference with prospective economic advantage, a party must: (1) demonstrate the existence of a business relationship or expectancy, with a probability of future economic benefit; (2) prove knowledge of the relationship or expectancy; (3) show that it was reasonably certain that, absent intentional misconduct, the claimant would have continued in the relationship or realized the expectancy; and (4) show that it suffered damage from the interference. *Glass v. Glass*, 228 Va. 39, 51-52, 321 S.E.2d 69 (1984).

In Count IV, Lexcadia alleges (1) a business relationship between Lexcadia's assignors and Earthwalk, which gave an expectancy of a premium on Hershey and Acadia's investment; (2) that NextGen had knowledge of the expectancy; (3) that absent defendants' intentional actions in forcing Earthwalk to "virtually bankrupt" itself, Earthwalk was reasonably certain to be sold or become an IPO candidate in as soon as six months; and (4) that Lexcadia was damaged as a result. For purposes of demurrer, Lexcadia's allegations are sufficient to state a *prima facie* claim for tortious interference with prospective economic advantage.

### 5. *Demurrer as to Count V*

Count V alleges tortious interference by Gianopulos and Dixon with the NextGen SPA, to which Lexcadia's predecessors were third-party beneficiaries. For the reasons stated in the discussion of the demurrer as to Count I, the demurrer as to Count V is sustained with prejudice, as Lexcadia has not adequately alleged that the parties to the NextGen SPA clearly and definitely intended to benefit Lexcadia's assignors.

### III. *Conclusion*

Defendants' Demurrer as to Count I, Count II, Count III, and Count V is sustained, with prejudice. Defendants' Demurrer as to Count IV is overruled.