# CIRCUIT COURT OF THE CITY OF RICHMOND

Old Dominion
Freight Line, Inc.

v.

Standard Security
Life Ins. Co. of N.Y. et al.

July 18, 2007

Case No. CH05-1870

BY JUDGE MARGARET P. SPENCER

This matter is before the Court on a demurrer raised by Defendants, Standard Security Life Insurance Company of New York ("Standard") and C. W. Midwest, Inc., d/b/a Cox Insurance Group and d/b/a Cox Insurance Group, Inc. (collectively "Cox"), to Counts II, III, IV, VII, and IX of an Amended Bill of Complaint brought against Standard and Cox by Plaintiff, Old Dominion Freight Line, Inc. ("Old Dominion"). The Court has considered the pleadings and written memoranda filed by the parties, counsels' arguments, and applicable Virginia law. The demurrer is sustained as to Counts II, III, VII, and IX. The demurrer is overruled as to Count IV.

## I. *Background*

An employee of Old Dominion incurred medical bills of approximately $1.5 million through Chippenham & Johnston-Willis Hospitals, Inc. ("CJW"). (Compl. 3.) Old Dominion provided its employees with health benefits

through a self-funded employee benefit plan (the "Old Dominion Plan"). (*Id.* at 2.) Standard provided excess loss insurance to Old Dominion (the "Excess Loss Insurance"). (*Id.*) The medical bills exceeded the self-insured limit under the Old Dominion Plan, triggering the Excess Loss Insurance coverage. (*Id.* at 4.)

On December 24, 2003, Standard and Cox, through an agent, negotiated a contract (the "December 24, 2003, Contract") with CJW to settle the billed charges for the reduced sum of $951,000, to be received by CJW no later than December 30, 2003. (*Id.*) On December 29, 2003, (the "December 29, 2003, Contract"), Cox instructed Old Dominion to advance $951,000 to CJW by December 30, 2003, in order to comply with the December 24, 2003, Contract. (*Id.* at 5.) Cox represented to Old Dominion that Old Dominion would be reimbursed for its payment to CJW in satisfaction of the December 24, 2003, Contract. (*Id.*) The funds were then sent by Old Dominion and accepted by CJW. (*Id.*) Subsequently, Cox and Standard denied Old Dominion's claim for reimbursement of the $951,000 paid to CJW. (*Id.*) Old Dominion then filed suit against Standard and Cox.

## II. *Procedural History*

Old Dominion filed an Amended Bill of Complaint on August 7, 2006. Pertinent to this opinion letter, Old Dominion alleges in Count II that Standard and Cox negligently misrepresented that, if Old Dominion advanced the settlement sum of $951,000 to CJW pursuant to the December 24, 2003, Contract, Standard would reimburse Old Dominion. (*Id.* at 7.)

In Count III, Old Dominion alleges Standard and Cox engaged in constructive fraud by knowingly and falsely representing to Old Dominion that, if it advanced the settlement sum of $951,000 to CJW pursuant to the December 24, 2003, Contract, Standard would reimburse Old Dominion. (*Id.* at 8.)

In Count IV, Old Dominion alleges Standard breached a third-party beneficiary contract intended to benefit Old Dominion by bringing finality to the employee's claim and reimbursing Old Dominion for paying the settlement sum of $951,000 to CJW pursuant to the December 24, 2003, Contract. (*Id.* at 9.)

In Count VII, Old Dominion alleges Standard and Cox acted in bad faith by denying Old Dominion's claim for reimbursement of the $951,000, entitling Old Dominion to recover punitive damages and attorney's fees under North Carolina General Statute § 58-63-1, *et seq.* (*Id.* at 12-13.)

In Count IX, Old Dominion alleges Standard and Cox's conduct constituted unfair and deceptive trade practices or acts in or affecting commerce in violation of North Carolina General Statute § 75-1.1, entitling Old Dominion to recover treble damages in accordance with North Carolina General Statute § 75-16 and attorney's fees in accordance with North Carolina General Statute § 75-16.1. (*Id.* at 14.)

On April 16, 2007, Standard and Cox each filed memoranda in support of their demurrer to Old Dominion's Amended Bill of Complaint. As to Counts II and III, respectively, Standard and Cox argue Old Dominion's claims for Negligent Misrepresentation and Constructive Fraud fail as a matter of law because those tort claims are based solely on contractual duties. (Standard's Br. in Supp. of Demurrer 5; Cox's Br. in Supp. of Demurrer 8.) Cox also contends Old Dominion's Negligent Misrepresentation claim fails to state a claim as a matter of law because Virginia does not recognize such a cause of action. (Cox's Br. in Supp. of Demurrer 7.) Cox further asserts Old Dominion's Negligent Misrepresentation and Constructive Fraud claims fail to state claims upon which relief can be granted because they are barred by the "economic loss" rule. (*Id.* at 14.) Cox also argues that, regardless of whether Virginia or North Carolina law governs Old Dominion's Negligent Misrepresentation and Constructive Fraud claims, the law is the same in both states. The law in Virginia and North Carolina, Cox asserts, refuses to recognize tort-based claims that arise solely from the breach of contractual duties. (Cox's Reply Br. in Supp. of Demurrer 2.)

As to Count IV, Standard contends Old Dominion's claim for Breach of Third-Party Beneficiary Contract fails because Old Dominion was not an intended beneficiary of the agreement between Standard and CJW. (Standard's Br. in Supp. of Demurrer 7.)

As to Count VII, Standard asserts Old Dominion has not pleaded facts to support the application of North Carolina law in this case and, therefore, Old Dominion fails to state a claim for Bad Faith under the North Carolina Code. (*Id.* at 11.) Cox argues Old Dominion's Bad Faith claim under North Carolina General Statute § 58-63-1, *et seq.* fails to state a claim upon which relief can be granted because, under the express language of the Bad Faith statute, only the Commissioner of Insurance of North Carolina has the power to bring such a claim. (Cox's Br. in Supp. of Demurrer 21.)

As to Count IX, Standard and Cox contend Old Dominion has not pleaded facts to support the application of North Carolina law, and therefore, Old Dominion fails to state a claim for Unfair Trade Practices under the North Carolina Code. (Standard's Br. in Supp. of Demurrer 13; Cox's Br. in Supp. of Demurrer 24.)

### III. *Analysis*

"The purpose of a demurrer is to determine whether a [bill of complaint] states a cause of action upon which the requested relief may be granted." *Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 712, 636 S.E.2d 447, 449 (2006). "A demurrer admits the truth of all properly pleaded material facts. All reasonable factual inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading." *Id.* at 713, 636 S.E.2d at 449 (quoting *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997)). In other words, "[i]n reviewing a demurrer, a trial court must consider the pleadings in the light most favorable to the plaintiff and sustain the demurrer if it is clear that the plaintiff has not stated a valid cause of action." *Ogunde v. Prison Health Servs., Inc.*, 274 Va. 55, 645 S.E.2d 520 (2007) (citing *Sanchez v. Medicorp Health Sys.*, 270 Va. 299, 303, 618 S.E.2d 331, 333 (2005)). "A demurrer does not admit the correctness of the conclusions of law found in the challenged pleading." *Tronfeld*, 272 Va. at 713, 636 S.E.2d at 449.

### A. *Counts II, III, VII, and IX*

The demurrer is sustained as to Counts II, III, VII, and IX regardless of whether Virginia or North Carolina law governs, because each of those Counts are tort actions based only on duties that arise from contract. It is well established in both Virginia and North Carolina that "[a] tort action cannot be based solely on a . . . breach of contract." *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 559, 507 S.E.2d 344, 347 (1998); *Lowe's Cos. v. Pacific Research Group, Inc.*, No. 5:05-cv-275, 2007 U.S. Dist. LEXIS 24020, *4 (W.D. N.C. Mar. 29, 2007).

In Virginia, when "determining whether a cause of action sounds in contract or tort, the source of the duty violated must be ascertained." *McDevitt*, 256 Va. at 558, 507 S.E.2d at 347.

> If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists), then the action is founded upon contract, and not upon tort. If, on the other hand,

the relation to the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of the contract . . . and the defendants [breach that duty], then the action is one of tort.

*Oleyar v. Kerr*, 217 Va. 88, 90, 225 S.E.2d 398, 399-400 (1976) (quoting *Burks' Pleading and Practice*, § 234 at 406 (4th ed. 1952)). While "a party can, in certain circumstances, show both a breach of contract and a tortious breach of duty," "the duty tortiously . . . breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *McDevitt*, 256 Va. at 558, 507 S.E.2d at 347 (quoting *Foreign Mission Bd. v. Wade*, 242 Va. 234, 241, 409 S.E.2d 144, 148 (1991)).

Likewise, "[u]nder North Carolina law, in order to state a viable claim in tort for conduct that is alleged to breach a contract, a plaintiff must allege a duty owed him by the defendant which is separate and distinct from any duty owed under a contract." *Lowe's Cos.*, 2007 U.S. Dist. LEXIS 24020, *4; see, e.g., *Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc.*, 994 F. Supp. 350, 362 (W.D. N.C. 1997); *Norman v. Tradewinds Airlines, Inc.*, 286 F. Supp. 2d 575, 595 (M.D. N.C. 2003) ("[I]n order to be liable for fraud, the promisor must do something more than just disregard or break its promises."); *US LEC Commc'ns, Inc. v. Qwest Commc'ns Corp.*, No. 05-11, 2006 U.S. Dist LEXIS 33705, 2006 WL 1367383, *2 (W.D. N.C. May 15, 2006) (same); *Strum v. Exxon Co., U.S.A.*, 15 F.3d 327, 330 (4th Cir. 1994) ("Only where a breach of contract also constitutes an `independent tort' may tort actions be pursued.") (citing Restatement (Second) of Contracts § 355 (1981)); cf. *Hoyle v. Bagby*, 253 N.C. 778, 117 S.E.2d 760, 762 (1961) ("It is the general rule that an unfulfilled promise cannot be made the basis for an action for fraud.") (citation omitted); *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 418 S.E.2d 694, 700 (1992) ("[A] mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under" North Carolina's Unfair and Deceptive Trade Practices Act.).

In this case, Old Dominion's allegations of Negligent Misrepresentation (Count II), Constructive Fraud (Count III), Bad Faith (Count VII), and Unfair Trade Practices (Count IX) "are nothing more than allegations of negligent performance," or intentional non-performance, "of contractual duties and are, therefore, not actionable in tort. A tort action cannot be based solely on a negligent [or intentional] breach of contract." *McDevitt*, 256 Va. at 559, 507 S.E.2d at 347. Here, "each particular misrepresentation [or intentional non-performance] by [Standard and Cox] related to a duty or an obligation that was specifically required by the" December 24, 2003, Contract and the December 29, 2003, Contract. *Id.* Standard and Cox "may have breached each one of

these contractual duties, but [their] actions do not give rise to a cause of action for" Negligent Misrepresentation, Constructive Fraud, Bad Faith, or Unfair Trade Practices. *Id.* "In short, [Old Dominion] has alleged only [Standard and Cox's] breach of contractual obligations `because no duty apart from contract to do what is complained of exists'." *Id.* (quoting *Oleyar*, 217 Va. at 90, 225 S.E.2d at 399). Accordingly, "[t]he source of any duty breached in this case is solely from the [December 24, 2003, Contract and December 29, 2003, Contract] between the parties." *Id.*

Moreover, "[t]he present case is not one of fraud in the inducement. Nothing in the record suggests that [Standard and Cox] did not intend to fulfill [their] contractual duties at the time [they] entered into the [December 24, 2003, Contract and December 29, 2003, Contract] with [Old Dominion]." *McDevitt*, 256 Va. at 560, 507 S.E.2d at 348. Instead, "[t]he appropriate remedy in this case is a cause of action for breach of contract," which Old Dominion may continue to pursue under Count I of its Amended Bill of Complaint. *Id.*

## B. *Count IV*

In Count IV, Old Dominion alleges Standard breached a third-party beneficiary contract intended to benefit Old Dominion by bringing finality to the employee's claim and reimbursing Old Dominion for paying the settlement sum of $951,000 to CJW pursuant to the December 24, 2003, Contract. (Compl. 9.) Standard, however, argues Old Dominion's claim for Breach of Third-Party Beneficiary Contract fails because Old Dominion was not an intended beneficiary of the agreement between Standard and CJW. (Standard's Br. in Supp. of Demurrer 7.) In other words, Standard and Cox argue Count IV does not allege any facts to support a conclusion that the agreement between Standard and CJW was clearly intended to bestow a benefit on Old Dominion.

"[U]nder certain circumstances, a party may sue to enforce the terms of a contract even though he is not a party to the contract." *Levine v. Selective Ins. Co. of Am.*, 250 Va. 282, 285, 462 S.E.2d 81, 83 (1995); Va. Code Ann. § 55-22 (2007). "At common law, one not a party to a contract did not have standing to sue for breach of contract. Virginia Code § 55-22 modified this common law bar to allow non-parties to sue under an instrument." *Crenshaw v. Union Trust Co. of Md.*, 16 Va. Cir. 27, 30 (Fairfax 1988). "In order to proceed on the third-party beneficiary contract theory, the party claiming the benefit must show that the parties to the contract `clearly and definitely intended' to confer a benefit upon him." *Copenhaver v. Rogers*, 238 Va. 361,

367, 384 S.E.2d 593, 596 (1989) (quoting *Allen v. Lindstrom*, 237 Va. 489, 500, 379 S.E.2d 450, 457 (1989); *Professional Realty Corp. v. Bender*, 216 Va. 737, 739, 222 S.E.2d 810, 812 (1976)). In other words, "a person who benefits only incidentally from a contract between others cannot sue thereon." *Copenhaver*, 238 Va. at 367, 384 S.E.2d at 596 (citing *Valley Co. v. Rolland*, 218 Va. 257, 260, 237 S.E.2d 120, 122 (1977)). "The essence of a third-party beneficiary's claim is that others have agreed between themselves to bestow a benefit upon the third party but one of the parties to the agreement fails to uphold his portion of the bargain." *Id.*

The Rules of the Supreme Court of Virginia require that a pleading "shall state the facts on which the party relies in numbered paragraphs, and it shall be sufficient if it clearly informs the opposite party of the true nature of the claim or defense." Va. Sup. Ct. R. 1:4(d) (2007). "The Virginia Supreme Court has stated that trial courts should not incorrectly short-circuit litigation at the pretrial stage by deciding the dispute without permitting the parties to have a trial on the merits." *Bay Point Condo. Ass'n Bd. of Dirs. v. Mid-Atlantic Ins. Corp.*, 54 Va. Cir. 124, 124 (Norfolk 2000) (citing *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 431 S.E.2d 277 (1993)).

In this case, Old Dominion alleges in its Amended Bill of Complaint that "[i]n negotiating and entering into the *December 24, 2003, Contract,* Standard . . . *intended* to confer a *direct* and not incidental benefit upon Old Dominion by adjusting and bringing finality to the [employee's] claim." (Compl. 9 (emphasis added).) The Amended Bill of Complaint further alleges:

> Standard . . . intended to confer a direct and not incidental benefit upon Old Dominion by and through the *December 29, 2003, Contract* and associated verbal communications in that by first advancing and then being reimbursed the reduced billed charges of $951,000.00, Old Dominion would have been fully reimbursed under the Standard Policy, the net result being that Standard, and not Old Dominion, would have paid the claim for [the employee's] medical care.

(*Id.* (emphasis added).) The Amended Bill of Complaint further alleges that "Standard . . . intended to confer the said benefits upon Old Dominion contemporaneous with the formation of the December 24, 2003, and December 29, 2003, Contracts." (*Id.*) Finally, the Amended Complaint alleges that "[a]mple consideration exist[ed] for the December 24, 2003, Contract, and the December 29, 2003, Contracts [*sic*]." (*Id.* at 9.)

Initially, the Court rejects Old Dominion's allegation that it is a third-party beneficiary of the December 29, 2003, Contract because Old Dominion was a party to the December 29, 2003, Contract between itself and Standard and Cox. (*Id.* at 5.) Old Dominion's own Amended Bill of Complaint states, "Old Dominion had no knowledge of the December 24, 2003, Contract until December 29, 2003, at which time Cox instructed Old Dominion pursuant to a facsimile communication . . . (the "December 29, 2003, Contract"), to advance $951,000.00 to the Hospital. (*Id.* at 5.) As mentioned above, a party suing on a breach of a third-party beneficiary contract claim cannot be a party to the contract. Rather, "[t]he essence of a third-party beneficiary's claim is that *others* have agreed between themselves to bestow a benefit upon the *third party* but one of the parties to the agreement fails to uphold his portion of the bargain." *Copenhaver*, 238 Va. at 367, 384 S.E.2d at 596 (emphasis added). Because Old Dominion was not a third party to the December 29, 2003, Contract, it cannot properly sue for a breach of that contract under a third-party beneficiary theory. As such, the Court will not consider facts related to the December 29, 2003, Contract in determining whether to sustain or overrule Standard and Cox's demurrer to Count IV. Because the Court also finds that the December 24, 2003, Contract is not ambiguous, evidence outside the four corners of that contract, such as the December 29, 2003, Contract, will not be considered. See, e.g., *Richmond Ctr. v. Jackson Co.*, 220 Va. 135, 255 S.E.2d 518 (1979).

Accordingly, the only remaining allegations for the Court to properly consider relate to the December 24, 2003, Contract. According to Old Dominion's Amended Bill of Complaint, the December 24, 2003, Contract was made between Standard and Cox's agent and CJW "to settle the $[1.5 million] in billed charges for the reduced sum of $951,000.00." (Compl. 4.) By its terms, the December 24, 2003, Contract states that "Standard [] will be responsible for" paying the settlement sum to CJW and that "[u]pon receipt of . . . $951,000,000 by [CJW], this account will be settled with nothing due or owing to [CJW] or any other individual or entity." (*Id.* at 5.) In other words, Old Dominion alleges that "[i]n negotiating and entering into the December 24, 2003, Contract, Standard and [CJW's agent] intended to confer a direct and not incidental benefit upon Old Dominion *by adjusting and bringing finality to the [employee's] claim.*" (*Id.* at 9 (emphasis added).)

The Court finds that Old Dominion states a valid cause of action for breach of third-party beneficiary contract by adequately alleging that, when Standard and Cox entered into the December 24, 2003, Contract with CJW, those parties intended to directly benefit Old Dominion by settling CJW's

claims for payment of Old Dominion's employee's medical bills, which were covered by the Old Dominion Plan and Excess Loss Insurance coverage. Accordingly, the demurrer is overruled as to Count IV.

## IV. *Conclusion*

In sum, the demurrer is sustained as to Counts II, III, VII, and IX and is overruled as to Count IV.