# Richmond

## Cleon W. Hill, Et Al. v. Cecile H. Luck.

March 7, 1960.

Record No. 5049.

Present, Eggleston, C. J., and Spratley, Buchanan, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*Arthur E. Smith* and *Evans B. Jessee*, for the appellants.

*Robert J. Rogers* (*Leonard G. Muse; Woods, Rogers, Muse & Walker*, on brief), for the appellee.

WHITTLE, J., delivered the opinion of the court.

Mrs. Luck filed a suit in equity against Cleon W. Hill, Verna S. Hill, his wife, and Erskine L. Hill, seeking to set aside a deed from Erskine L. Hill and Irene L. Hill, his wife, to Cleon W. Hill and Verna S. Hill. The deed conveyed a residence located in the County of Roanoke known as Bonnie Brook.

The bill prayed that Cleon W. Hill and Verna S. Hill be enjoined from disposing of the property pending the outcome of the suit, and further, that the property be reconveyed to Erskine L. Hill.

The alleged ground for setting aside the deed was that Erskine L. Hill and wife had, in the year 1953, made a verbal contract with Mrs. Luck, a widowed sister of Erskine's, to the effect that if Mrs. Luck would care for Erskine L. Hill and Irene L. Hill, upon the death of the last survivor Bonnie Brook would be devised to Mrs. Luck.

The record discloses that on June 5, 1957, Erskine L. Hill and wife conveyed Bonnie Brook to his brother, Cleon W. Hill, and Verna S. Hill, his wife, with the right of survivorship, retaining a life estate in the property.

Irene L. Hill died on July 15, 1957, and the suit was instituted September 19, 1957.

Cleon W. Hill and Verna S. Hill filed a demurrer to the bill stating that it failed to allege a definite and complete contract. A plea of the statute of frauds was also filed alleging that the contract was one for the conveyance of real estate, and was not in writing as required by law. Code, § 11-2. No pleadings were filed by Erskine L. Hill.

The trial court overruled the demurrer and refused to sustain the plea, whereupon appellants filed their answer.

The evidence was heard *ore tenus* before the chancellor, and on January 5, 1959, a final decree was entered setting aside the deed from Erskine L. Hill and Irene L. Hill to Cleon W. Hill and Verna S. Hill, and directing that Bonnie Brook be reconveyed to Erskine L. Hill.

From this decree we granted an appeal.

The appellants filed nine assignments of error which they say pose five questions for decision. However, the crucial question is whether or not a valid and enforceable contract between Cecile H. Luck on the one hand and Erskine L. Hill and Irene L. Hill on the other has been proved in the manner required by law, and if so, whether the terms of such contract prohibit or limit the conveyance by Erskine

L. Hill of the real estate known as Bonnie Brook to Cleon W. Hill and Verna S. Hill.

The record discloses that Bonnie Brook, the subject of this litigation, is a home in Roanoke County which was acquired by Erskine L. Hill many years ago. In the year 1948 Erskine suffered a cerebral hemorrhage which disabled him. He was prevented from taking an active role in life and required extensive nursing care. His wife was unable to render the necessary assistance due to her addiction to the use of alcohol. Other members of the family—brothers and sisters—took upon themselves, along with the help of a servant, the responsibility of caring for both Erskine and his wife.

Mrs. Luck visited Bonnie Brook frequently and rendered substantial assistance and nursing care to both Erskine and Irene. While prior to June, 1957, she did not live at Bonnie Brook, she went there frequently to see to their needs. Cleon W. Hill, a brother of Erskine's, likewise made frequent trips to Bonnie Brook, both to visit his brother and to do various odd jobs in connection with the maintenance of the property.

The testimony of both the lay witnesses and Erskine's doctor was that he is able to utter only unconnected words and phrases. According to Dr. Hurt, who has been Erskine's physician since he suffered the cerebral hemorrhage, he is capable of understanding and "his mind is all right."

Mrs. Luck testified that in the month of August, 1953, she was contemplating moving to Florida for the purpose of residing there permanently; that upon hearing of her plans Erskine and Irene begged her to remain in Roanoke so she could continue taking care of them as she had been doing during the preceding three years. She further said it was thereupon agreed that if she would remain there, at the death of the one who survived the other, Bonnie Brook and whatever else they owned would go to her. There was no written contract in connection with the alleged agreement.

In the month of September, 1953, Mrs. Luck, together with Irene, consulted the Trust Department of a Roanoke bank for the purpose of having wills drawn for themselves and for Erskine. After discussing the matter with them the trust officer of the bank referred the two ladies to a law firm where the actual preparation of the wills was done by Mr. J. M. Barrett, an attorney.

The wills of Erskine and Irene left the entire estate of each to the other, in trust for life, with unlimited power of disposition and a general power of appointment, with the provision that upon the **death**

of the last survivor whatever remained in the estate would go to Mrs. Luck. The wills made no distinction between the disposition of real estate and personal property nor did they make mention of Bonnie Brook.

As a result of the same conference and at the same time, Mrs. Luck executed her will, prepared by the same attorney. In her will she left her personal effects to Erskine and Irene or the survivor, and the income from the balance of her estate was to be paid to Erskine and Irene or the survivor for the remainder of their lives, giving them the right to withdraw or use any portion of the principal thereof, and granting to the last survivor a power of appointment.

At the conference with the attorney regarding the preparation of the wills no mention was made of the alleged contract between the parties.

The record discloses that after the execution of the three wills the parties continued living as they had prior thereto until June, 1957, at which time Mrs. Luck moved into Bonnie Brook with Erskine and Irene. Irene was then in the last stages of a fatal malady. She died on July 15, 1957, leaving no appreciable estate.

As aforesaid, a deed was prepared on June 5, 1957, wherein Erskine and Irene conveyed Bonnie Brook to Cleon W. Hill and Verna S. Hill. Upon learning of this deed, Mrs. Luck, on September 19, 1957, three months after she moved to Bonnie Brook, instituted this suit.

The pertinent part of the Virginia statute of frauds provides: "No action shall be brought in any of the following cases:

\* \* \* \* \* \* \*

"Upon any contract for the sale of real estate, or for the lease thereof for more than a year;

\* \* \* \* \* \* \*

"Unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged thereby, \* \* \*," (§ 11-2, Code, 1950).

This statute has been repeatedly held to apply to contracts for the testamentary disposition of real estate. *Hale* v. *Hale* (1894), 90 Va. 728, 19 S. E. 739; *Clay* v. *Clay*, (1955), 196 Va. 997, 86 S. E. 2d 812.

Thus the alleged contract here relied on by Mrs. Luck is within the operation of the statute.

The requirements of law for the maintenance of a suit for specific

performance of an oral contract within the statute of frauds have been frequently and clearly stated by our court since 1872:

"1. The parol agreement relied on must be certain and definite in its terms.

"2. The acts proved in part performance must refer to, result from, or be made in pursuance of the agreement proved.

"3. The agreement must have been so far executed that a refusal of full execution would operate a fraud upon the party, and place him in a situation which does not lie in compensation." *Wright* v. *Pucket*, 22 Gratt. (63 Va.) 370.

We are here concerned with the first requirement.

It is said that although it has been lamented that courts of equity ever departed in this particular from the precise terms of the statute, yet the jurisdiction is now too firmly established to be shaken otherwise than by statute. The doctrine, however, is reluctantly applied, and never further than the adjudged cases and the principles established by them require. Minor on Real Property, 2nd Ed., Ribble, Vol. 2, § 1198, p. 1598.

Not only must the agreement be clearly proved but it must be complete, certain and definite in all its parts. Its terms must be so precise as to obviate any reasonable misunderstanding of its import; and if the terms be vague and uncertain, or the evidence to establish the contract be insufficient, a court of equity will decline to interpose in order to enforce it, and will leave the party to his legal remedy, if there be any. Minor or Real Property, 2nd Ed., Ribble, Vol. 2, § 1207, pp. 1607, 1608. Cf. *Patton* v. *Patton*, this day decided, 201 Va. 705, 112 S. E. 2d 849.

In the instant case Mrs. Luck's own testimony fails to establish such a contract. Her complete version of the contract is as follows: After telling Erskine and Irene she was going to Florida, Irene said "Well, if you won't go, we will leave you everything that we have at our death—we will give you everything if you will stay and take care of us."

Only by inference was Bonnie Brook included in this alleged contract. The understanding that "we will leave you everything that we have at our death" is borne out by the wills later signed by Erskine and Irene. The wills in no way limited either Erskine's or Irene's right to dispose of any property they had prior to their death, and the power of appointment gave them the absolute right to give the property to whomsoever they saw fit at death.

On cross-examination Mrs. Luck testified that when she and Irene

talked to the attorney who prepared the wills he explained everything to them, including the operation and effect of the power of appointment in the wills. She said:

"A.    * * * I knew what I wanted, Irene knew what she wanted, so that is what we had.

"Q.    You knew when the wills were being prepared what they contained and what they would do?

"A.    Yes.

"Q.    You knew, of course, if Erskine should die Irene had the right to use up the entire estate if she wanted to?

"A.    Yes, I knew that.

"Q.    And you knew she had the right to withdraw any portion of it?

"A.    Yes, I knew that.

"Q.    Any you knew if she died she could leave it to anyone she pleased by the power of appointment?

"A.    Yes.

"Q.    But if she failed to leave it to anyone she pleased, you got it?

"A.    I knew that.

"Q.    And they were the terms you agreed upon?

"A.    They were the terms we agreed upon."

Later Mrs. Luck testified regarding her understanding of the alleged contract:

"Q.    Did you consider that Erskine had no right after he entered into this agreement you say you had with him to reward any other member of the family if he wanted to?

"A.    I don't think any member of the family had any right to go in and take his home from him.

"Q.    Even if he wished to give it to him?

"A.    If he wished it, yes."

She further stated: "After they made the will and after I agreed to devote my life to them, I did not expect them to give Bonnie Brook or anything they had, other than to me; that is the reason I stayed in Roanoke to take care of them—I certainly didn't expect them to give any part of the property to them."

It is clear that Mrs. Luck's case can rise no higher than her own testimony. All she got under the alleged contract was an expectancy. There was nothing in the alleged oral contract itself nor was there anything in the wills which she offered in support of the contract that in any way prohibited Erskine or Irene from disposing of their property as they saw fit. Mrs. Luck's own testimony precludes any

other interpretation. The fact that she did not "expect" Erskine to convey the property to Cleon W. Hill and his wife does not establish the fact that he did not have a legal right to make the conveyance.

The decree appealed from is reversed and a final decree will be entered here dismissing the appellee's bill.

*Reversed and final decree.*