# CIRCUIT COURT OF THE CITY OF MARTINSVILLE

Anne Main Hollander,
Robert E. Hollander,
David B. Hollander,
and Shayna A. Hollander

v.

David Hollander,
Administrator
of the Estate of
Ralph Hollander,
Peggy W. Hollander,
in her individual capacity,
and Peggy W. Hollander,
in her capacity as Trustee
of the Ralph and Peggy Hollander
Revocable Living Trust

August 22, 2013

Case No. CL10-255

By Judge G. Carter Greer

In their amended complaint, the plaintiffs seek $8,000,000 in compensatory damages from the Estate of Ralph Hollander ("Estate") for breach of contract. The plaintiffs also seek $8,000,000 in compensatory damages from Peggy W. Hollander ("Peggy"), individually and as trustee, for tortious interference with contract and conspiracy to breach contract. In addition, the plaintiffs seek an order (1) declaring *inter vivos* transfers to Peggy as fraudulent and voluntary as against creditors, pursuant to Va. Code §§ 55-80 and 55-81, (2) requiring the recapture of those assets by the estate and the distribution of the assets in accordance with the terms of a 1980 will, and (3) awarding attorney's fees and court costs under § 55-82.1. Finally, the plaintiffs request an order imposing a constructive

trust on all assets transferred from Ralph Hollander to Peggy through *inter vivos* transfers.

Peggy has filed a demurrer, asserting that (1) David Hollander, Robert E. Hollander, and Shayna A. Hollander have failed to state a claim for which relief may be granted because they have no standing to sue as third-party beneficiaries, that (2) the claims of all plaintiffs are barred by the applicable statute of limitations[1] and laches[2] and that (3) the cause of action for breach of contract must fail on the grounds that (i) "[t]he uncertainty of the terms of the contract renders it unenforceable on its face," demurrer at 12, and (ii) "[n]o damages can be shown as Anne Hollander had nothing but an expectancy interest in Ralph Hollander's estate. . . ." Demurrer at 14.

The law pertaining to the consideration of a demurrer is well-settled. "A demurrer accepts as true all facts properly pleaded, as well as reasonable inferences from those facts." *Steward v. Holland Family Properties,* 284 Va. 282, 286, 726 S.E.2d 251, 253-54 (2012). In another recent case, the Supreme Court of Virginia stated that, "[a]t the demurrer stage, it is not the function of the trial court to decide the merits of the allegations set forth in a complaint, but only to determine whether the factual allegations pleaded and the reasonable inferences drawn therefrom are sufficient to state a cause of action." *Friends of the Rappahannock v. Caroline County,* 286 Va. 38, 44 (2013). *See also Fun v. Virginia Military Institute,* 245 Va. 249, 252, 427 S.E.2d 181 (1993) (a demurrer "tests the sufficiency of factual allegations to determine whether the motion for judgment states a cause of action").

Accordingly, the court must accept as true the following facts, which appear in the complaint:

1. Anne Main Hollander ("Anne") and Ralph Hollander ("Ralph") were married on January 4, 1942, and they had three children: Robert, David, and Shayna (collectively, "the children").

2. During their marriage, Anne and Ralph "accumulated a significant amount of marital wealth, most of which was non-liquid and not easily susceptible to equitable division but which they expected would significantly appreciate in value." Complaint, ¶ 6.

3. On February 23, 1981, Anne and Ralph were divorced by entry of a final decree, which ratified, confirmed, and approved a property settlement agreement ("PSA") dated January 2, 1980.

---

1. In oral argument at the first hearing, Peggy conceded that she had not properly raised the defense of the statute of limitations. *See* Va. Code § 8.01-235, stating that "[t]he objection that an action is not commenced within the limitation period prescribed by law can only be raised as an affirmative defense specifically set forth in a responsive pleading," and that "the defense that the statutory limitation period has expired cannot be set up by demurrer."

2. Moreover, Peggy has not properly raised the defense of laches. *See Wilkerson v. Wilkerson,* 151 Va. 322, 329, 144 S.E. 497, 499 (1928) ("Laches in many instances is a mixed question of law and fact, and for that reason should not usually be disposed of on demurrer").

4. Paragraph 7 of the PSA states as follows:

> The husband agrees that he will not alter, change, or amend his Last Will and Testament as currently constituted except as hereinafter set forth. Said Last Will and Testament is on file at the offices of Gardner and Gardner, 10 North Bridge Street, Martinsville, Virginia. Husband agrees that he will not at any time prior to his death or prior to the death of wife herein make any changes in his will concerning the provisions which currently inure to the benefit of the wife.

5. At the time of the execution of the PSA, Ralph's testamentary instruments consisted of a Last Will and Testament executed on March 21, 1977, a First Codicil executed on November 3, 1978, and a Second Codicil executed in January 1980 (collectively, "the 1980 Will").

6. The 1980 Will devised the remainder of Ralph's estate to a trust to be administered by Robert Elliott Hollander, trustee, as follows:

> (a) The Trustee shall pay all the net income from the trust in convenient installments, but not less frequently than quarter annually to my wife during her lifetime.

> (b) In addition, the Trustee shall be fully authorized to pay my wife such sums of the principal of the trust as the said Robert Elliott Hollander shall deem to be necessary or advisable from time to time for her proper medical care, comfortable maintenance, and welfare. Robert Elliott Hollander, Trustee, may expend from principal for the benefit of said Anne Main Hollander such sums, as in his discretion, may be necessary for her maintenance, support, and welfare.

> (c) Upon the death of Anne Main Hollander, the entire remaining principal of the trust shall be paid over and distributed to my children in equal shares, *per stirpes*.

7. In executing the PSA, it was the intention of the parties "that Anne would forego her claim for a divorce based on grounds of adultery and that she would settle on financial terms associated with the dissolution of the marriage in exchange for Ralph's promise to continue to manage and control the marital assets such that Anne would receive the future benefit of those assets, in trust, as appreciated during Ralph's lifetime, and that their children . . . would receive those assets (to the extent not consumed by the trust distributions to Anne) upon Anne's death." Complaint, ¶ 7.

8. After Ralph's divorce from Anne, he married Peggy, and, in 2002, Ralph and Peggy created the Ralph Hollander and Peggy Wilmouth

Hollander Revocable Living Trust ("Revocable Living Trust"). Ralph transferred "substantially all of his assets" to Peggy individually and in her capacity as trustee of the Revocable Living Trust, despite the PSA.

9. The Revocable Living Trust "is a testamentary document which Ralph used as a substitute for a Last Will and Testament and which altered his estate plan as set forth in the 1980 Will." Complaint, ¶ 12.

10. Peggy "is in possession or control of the assets which were the subject of the PSA." Complaint, ¶ 13.

11. At the time of Ralph's death on May 28, 2009, the estate consisted of no assets, and no will has been offered for probate.

A. *The children have sufficiently pleaded that the contracting parties intended to confer a direct benefit upon them.*

That one who is not a party to a contract may sue to enforce its terms under certain circumstances is well-established. *See Levine v. Selective Insurance Co.*, 250 Va. 282, 462 S.E.2d 81 (1995), and Va. Code § 55-22. "The essence of a third-party beneficiary's claim is that others have agreed between themselves to bestow a benefit upon the third party but one of the parties to the agreement fails to uphold his portion of the bargain." *Copenhaver v. Rogers*, 238 Va. 361, 367, 384 S.E.2d 593 (1989). The Supreme Court of Virginia has "recognized a specific limitation to the third-party beneficiary doctrine in that 'the third party must show that the contracting parties clearly and definitely intended that the contract confer a benefit on him'." *Environmental Staffing Corp. v. B & R Construction Management*, 283 Va. 787, 793, 725 S.E.2d 550 (2012). "Put another way, a person who benefits only incidentally from a contract between others cannot sue thereon." *Copenhaver*, 238 Va. at 367. "[W]hether a contract [is] intended for the benefit of a third person [is] generally regarded as [an issue] of construction and . . . the intention of the parties is determined by the terms of the contract as a whole." *Environmental Staffing Corp.*, 283 Va. at 793 (quoting *Valley Landscape Co. v. Rolland*, 218 Va. 257, 261, 237 S.E.2d 120, 123 (1977)).

Relying upon *Copenhaver, supra*, Peggy argues that, since the children are not mentioned in paragraph 7 of the PSA, the contracting parties did not intend to confer a direct benefit on them and that the children are at best incidental beneficiaries. Demurrer at 3-4. In *Copenhaver*, the plaintiffs' grandparents hired a prominent law firm to prepare wills for them in an effort to minimize estate taxes. Following the deaths of their grandparents, the plaintiffs, claiming that the lawyer who prepared the wills had given negligent advice, filed a legal malpractice action, and the trial court sustained the defendants' demurrer. On appeal, the Supreme Court of Virginia affirmed, stating that, "[i]n this case, there is no allegation that [the grandparents] entered into a contract with Rogers with the intent of conferring a direct benefit upon the Copenhavers[,] [n]or are there any other

allegations from which such an inference can be drawn." *Id.*, 238 Va. at 367. *See also MNC Credit Corp. v. Sickels*, 255 Va. 314, 321, 497 S.E.2d 331 (1998) (holding that the trial court properly sustained a demurrer because MNC Credit failed to allege that the attorneys executed the contract with the lending institution with the intent of conferring a direct benefit on MNC Credit). However, *Copenhaver* is distinguishable on its facts, for paragraph 7 of the Complaint alleges that it was the intention of the contracting parties to transfer the remainder of the trust corpus, certainly a significant benefit, to the children upon Anne's death. The plaintiffs correctly point out that, "[a]t the demurrer stage, the question before the [c]ourt is not whether the [children] are third-party beneficiaries; instead, it is whether they have sufficiently pleaded that they are third-party beneficiaries." Plaintiffs' Brief in Opposition to Motions to Crave Oyer and Demurrers at 6.

**B.** *Since the PSA is ambiguous, it will be necessary for the finders of fact to hear parol evidence in order to ascertain the intention of the parties.*

The main issue in this case is what Anne and Ralph intended in paragraph 7 of the PSA. In that paragraph, Ralph agreed "that he will not at any time prior to his death or prior to the death of wife herein make any changes in his will concerning the provisions which currently inure to the benefit of the wife." Does this clause mean precisely what it says or does it mean that Ralph had a duty to preserve a particular asset or his assets in general so that, at his death, there would be a source of money to fund the trust created in the 1980 will?

Peggy argues that "[t]he operative promise is that Ralph Hollander will not change the provisions of his will in relation to Anne Hollander," Defendants' Supplemental Brief in Support of Demurrers at 3, and that "[t]o presume that Ralph Hollander would be promising to retain and maintain all of his assets for the benefit of his ex-wife until such time as he is deceased is not supported by the plain language of the property settlement agreement." Demurrer at 14. Citing *Hill v. Luck*, 201 Va. 586, 112 S.E.2d 858 (1960), Peggy contends that Anne had only an expectancy, rather than a contractual right. Defendants' Supplemental Brief in Support of Demurrers at 4. In that case, the Hills, an elderly couple, promised Luck that, if she would not go to Florida but would stay and take care of them, "we will leave you everything that we have at our death." Shortly thereafter, the Hills conveyed their home, the most valuable part of their property, to relatives. Following the death of Mrs. Hill, Luck sued to set aside the deed on the ground that the conveyance violated the terms of the contract to make a will. In reversing the trial court's decision in the caregiver's favor, the Supreme Court of Virginia stated as follows: "All [Luck] got under the alleged contract was an expectancy. There was nothing in the alleged oral contract itself nor was there anything in the wills . . . that in any way prohibited Erskine or Irene from disposing of their property as they saw fit." *Id.*, 201 Va. at 591. In

short, Peggy argues that the plaintiffs are "in the same boat" as the caregiver in *Hill*, Defendants' Supplemental Brief in Support of Demurrers at 4, and that "[a]s there was no inclusion in the settlement agreement that prevents Ralph Hollander from making transfers and depleting his estate, there are no damages to Plaintiffs and thus no breach of contract." Demurrer at 14.

In addition, Peggy asserts that "the Plaintiffs cannot prove with any certainty damages even presuming Ralph Hollander had an obligation to preserve his assets." Demurrer at 17. This argument is without merit. *See Kiser v. Amalgamated Clothing Workers*, 169 Va. 574, 588, 194 S.E. 727 (1938) ("a party who has broken his contract will not ordinarily be permitted to escape liability because of the uncertainty in the amount of damage resulting, and the fact that the full extent of the damages for the breach must be a matter of speculation is not a ground for refusing all damages").

The plaintiffs respond by arguing that paragraph 7 of the PSA is ambiguous, and the court agrees with the plaintiffs. "An ambiguity exists when the contract's language is of doubtful import, is susceptible of being understood in more than one way or of having more than one meaning, or refers to two or more things at the same time." *Pocahontas Mining, L.L.C. v. CNX Gas Co.*, 276 Va. 346, 352-53, 666 S.E.2d 527 (2008). *See also Renner Plumbing v. Renner*, 225 Va. 508, 303 S.E.2d 894 (1983). "No word or phrase employed in a contract will be treated as meaningless if a reasonable meaning can be assigned to it, and there is a presumption that the contracting parties have not used words needlessly." *Pocahontas Mining L.L.C.*, 276 Va. at 353. One of the guiding principles of contract construction is that "every part of the contract must be made, if possible, to take effect, and every word of it must be made to operate in some shape or other." *Hughes & Co. v. Robinson*, 211 Va. 4, 6-7, 175 S.E.2d 413 (1970). The first sentence of paragraph 7 states simply that Ralph "agrees that he will not alter, change, or amend his Last Will and Testament as currently constituted *except as hereinafter set forth*." (Emphasis added.) As the plaintiffs point out, rather than setting forth any exceptions, paragraph 7 states further that Ralph "agrees that he will not at any time prior to his death or prior to the death of wife herein make any changes in his will *concerning the provisions which currently inure to the benefit of the wife*." (Emphasis added.) Peggy's argument that the second sentence is a "clarification" of the first is without merit because the first sentence needs no elucidation. Defendants' Supplemental Brief in Support of Demurrers at 3. Since the first sentence binds Ralph not to make *any* changes to his 1980 will, including, presumably, changes to provisions that benefit Anne, what purpose does the second sentence serve? The second sentence must mean more than what it purports to say, and it must be necessary for some purpose that is not clearly expressed. Otherwise, the second sentence is meaningless and unnecessary. Therefore, an ambiguity exists.

Peggy is estopped from denying that an ambiguity exists by a judicial admission that "[t]he terms of the property settlement agreement are vague and undefined," and that "[t]he uncertainty of the terms of the contract renders it unenforceable on its face." Demurrer at 12. In *Burch v. Grace Street Building Corp.*, 168 Va. 329, 191 S.E. 672 (1937), the Supreme Court of Virginia stated as follows:

> In Virginia, we have also approved the general rule that a party is forbidden to assume successive positions in the course of a suit, or series of suits, in reference to the same fact or state of facts, which are inconsistent with each other, or mutually contradictory. A litigant is estopped from taking a position which is inconsistent with one previously assumed, either in the course of litigation for the same cause of action, or in dealings in pais.

*Id.*, 168 Va. at 340 (emphasis omitted). See also *Rohanna v. Vazzana*, 196 Va. 549, 84 S.E.2d 440 (1954); *Berry v. Klinger*, 225 Va. 201, 207, 300 S.E.2d 792 (1983) ("Berry and Wright, having contended in their pleadings and in their initial arguments at trial that the language in question was unambiguous, will not be allowed to take a contrary position thereafter."). In her supplemental brief, Peggy argues that "the property settlement agreement is not ambiguous," but, having taken an inconsistent position in her demurrer, she is not at liberty to make such an argument. Defendants' Supplemental Brief in Support of Demurrers at 2.

In light of the court's ruling as to the ambiguity of the PSA, parol evidence is admissible in order to explain the intent of the parties. It is a general rule that, "in controversies between two parties to a contract, parol evidence of prior or contemporaneous oral negotiations or stipulations is inadmissible to vary, contradict, add to, or explain the terms of a complete, unambiguous, unconditional, written instrument." *Godwin v. Kerns*, 178 Va. 447, 451, 17 S.E.2d 410 (1941). In *Online Resources Corp. v. Lawlor*, 285 Va. 40, 736 S.E.2d 886 (2013), the Supreme Court of Virginia stated as follows:

> Ordinarily, it is the duty of the court to construe a written contract when it is clear and unambiguous on its face, but when a contract is ambiguous it is necessary to resort to parol evidence to ascertain the intention of the parties. In such cases, if reasonable people could draw different conclusions, the meaning of the contract upon the evidence presented should be submitted to the jury.

*Id.*, 285 Va. at 54. Even if the PSA were not ambiguous, the parol evidence rule would not bar Anne from introducing evidence of "prior or contemporaneous oral negotiations or stipulations" in order to explain the intent of the parties, for the parol evidence rule "operates only between the parties to a writing and has no application in a suit involving strangers to the writing *nor in a suit involving one party to the writing and a stranger thereto.*" *McComb v. McComb*, 226 Va. 271, 274-75, 307 S.E.2d 877 (1983) (emphasis added). Since Peggy is a stranger to the contract, neither she nor Anne is bound by the parol evidence rule.

In view of the fact that a jury must hear parol evidence in order to determine the intent of the contracting parties, the court overrules the demurrer. *See Lemon v. Hufford*, 77 Va. Cir. 386 (2009).